A05A1590. GOLDEN v. THE STATE.
(623 SE2d 727)

ANDREWS, Presiding Judge.

Betty Golden appeals from the judgment of conviction entered on jury verdicts finding her guilty of fleeing or attempting to elude a police officer and misdemeanor obstruction of a police officer. For the following reasons, we find no error and affirm.

1. Contrary to Golden's claim, the evidence was sufficient to support the guilty verdicts.

On appeal from the convictions, Golden no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdicts. *Grier v. State,* 218 Ga. App. 637, 638 (463 SE2d 130) (1995). Moreover, an appellate court does not assume the jury's role as factfinder by weighing the evidence or determining the credibility of witnesses, but determines only whether there was evidence proving every essential element of the charged offenses sufficient for a rational trier of fact to find Golden guilty beyond a reasonable doubt. *Parker v. State,* 220 Ga. App. 303 (469 SE2d 410) (1996); *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). If there is evidence sufficient under the above standard, even if other evidence contradicts it, the jury's guilty verdicts will be upheld. *Kellibrew v. State,* 239 Ga. App. 783 (521 SE2d 921) (1999).

The State charged that Golden violated OCGA § 40-6-395 (a)

in that the accused did willfully fail or refuse to bring her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer, to wit; Ofc. Greg Phillips, when given a visual or audible signal to bring the vehicle to a stop.

The State further charged that Golden violated the misdemeanor provisions of OCGA § 16-10-24 (a)

in that the accused did knowingly and willfully obstruct or hinder Ofc. Greg Phillips, a law enforcement officer, in the lawful discharge of his official duties, to wit; by refusing to follow the reasonable and lawful commands of said officer.

Viewing the evidence in the light most favorable to the guilty verdicts, the State presented the following evidence in support of the charges. City of Centerville Police Officer Greg Phillips was parked in his marked patrol car on the shoulder of Houston Lake Road in Centerville at about 1:30 a.m. when he observed a car approaching him on the road from the rear. As the car passed, the officer observed that it drifted away from his patrol car to the point where the driver's side tires of the car were riding on the centerline almost into the opposite lane of traffic and then drifted back toward the other side of the lane to the line marking the road shoulder. Although the officer thought this movement might have been the driver's effort to give his parked patrol car a wide berth, he was also concerned that this kind of lane movement could be evidence of an impaired driver. The officer pulled out behind the car without any intent to stop the car, but only to observe the car for evidence that the driver might be impaired. After following the car for about an eighth of a mile, the officer observed that the car continued to drift across the lane "going over the yellow line back to the white fog line." At that point, the officer decided to stop the car to investigate. While traveling behind the car, the officer initiated a traffic stop by activating the blue lights on his patrol car as the two cars approached the intersection of Houston Lake Road and Dunbar Road. The driver did not stop in response to the blue lights, but instead passed by a lighted gas station near the intersection, then slowed down at the intersection as the traffic light turned from red to green, then proceeded through the intersection and continued on Houston Lake Road. When the driver went through the intersection and did not stop, Officer Phillips activated his siren and notified another officer by radio that he was following a driver who was refusing to stop. The driver still did not stop with the officer following the car with blue lights and siren activated. Instead, the driver activated the car's hazard lights and continued to drive along Houston Lake Road. At that point, Centerville Police Officer Tracy Folds, who received Officer Phillips's radio call, was three or four miles behind Officer Phillips on Houston Lake Road. Officer Folds activated the blue lights on his marked patrol car and traveled the three to four miles at about seventy to eighty miles per hour to catch up to Officer Phillips. When Officer Folds pulled up behind Officer Phillips, he observed that Phillips was still following the car and that the driver was refusing to stop. Officer Folds passed Officer Phillips and the car Officer Phillips was following, pulled into the lane of

traffic in front of the car, and slowed down until the driver of the car was forced to stop — a so-called "rolling roadblock" maneuver.

Because the officers had no information about the driver of the car, and the driver refused to stop until force was used, the uniformed officers treated the stop as a felony stop and exited their patrol cars with their weapons drawn as a safety measure. Officer Phillips approached the car, identified himself as a police officer, and ordered the driver to open the door and exit the car. When the driver failed to comply, Officer Phillips knocked on the car window, but the driver still failed to comply. Officer Phillips attempted to open the door from the outside but could not do so. The driver then rolled down the window, but still did not open the door or exit the car despite continued verbal orders from the officer to do so. Finally, Officer Phillips reached through the window and opened the car door. At that point, Officer Phillips saw for the first time that the driver of the car was a female, later identified as Golden. Golden complained that the officers were harassing her, remained seated in the car, and refused to give Officer Phillips her driver's license or proof of insurance when he requested them. At one point, Golden made a 911 call on her cell phone to complain that the officers were harassing her. Several minutes into the stop, Golden finally exited the car and gave Officer Phillips her license and insurance. She told the officers that she did not stop because she was concerned for her safety and did not believe they were police officers. After Golden tested negative for any signs of alcohol consumption, Officer Phillips issued her three citations. Two of the citations were the bases for accusations on which Golden was found guilty by the jury of violating OCGA §§ 40-6-395 (a) (fleeing or attempting to elude the police officer) and 16-10-24 (a) (misdemeanor obstruction of the police officer). The third citation was the basis for an accusation on which Golden was found not guilty by the jury of improper lane usage.

Golden gave the following testimony in her own behalf at trial. Golden said she was a retired grandmother returning home from a late night trip to the grocery store when she spotted flashing blue lights behind her and heard a siren. She kept driving "for a few moments" because she had done nothing wrong, but when the car did not go around her, she assumed it was "after me." Nevertheless, she did not stop because it was dark, she was alone, and she was afraid it could be "a bad cop," or could be an imposter who bought blue lights and a siren for a car, and she could not see police markings on the car. She turned on her hazard lights after seeing the blue lights and hearing the siren because "if this was a legitimate officer, I wanted him to know that I wasn't trying to flee," and that she was looking for a safe place to stop. When Officer Folds passed her, Golden saw that he was in a marked police car and, at that point, she intended to stop.

When, according to Golden, Officer Folds "quickly whipped in front of [her] and stopped quickly," Golden said she stopped, not only because she was forced to stop, but also because she recognized that Folds was a police officer and she intended to stop. When she saw a police officer pointing a gun at her after she stopped, she was so nervous she could not get the car door open when the officer told her to exit the car. She denied refusing to open the door or refusing to give the officer her license and insurance. Golden admitted that she called 911 on her cell phone from the scene of the stop to report that she was being harassed by Centerville police officers, who she said "continually badgered [her] with question after question."

Pursuant to OCGA § 40-6-395 (a), a driver who wilfully fails or refuses to bring his or her car to a stop when a pursuing police officer signals for the driver to stop is guilty of a misdemeanor of a high and aggravating nature. The statute provides that the signaling officer must be appropriately uniformed and the pursuing vehicle must be marked showing it to be an official police vehicle. *Phillips v. State*, 162 Ga. App. 471-472 (291 SE2d 776) (1982). Under the statute, the officer's signal to stop may be given visually by emergency light or audibly by siren. OCGA § 40-6-395 (a). Whether a driver, after being signaled to stop in compliance with the statute, wilfully fails or refuses to stop is a question for the trier of fact based upon consideration of all the relevant circumstances, including words, conduct, demeanor and motive. *Cornwell v. State*, 246 Ga. App. 686, 688 (541 SE2d 101) (2000).

The evidence shows that, after a uniformed police officer in a marked police vehicle gave Golden visual and audio signals to stop in compliance with OCGA § 40-6-395 (a), she failed or refused to stop for a substantial distance despite acknowledging she was aware of the signals, and that she did not stop until she was forced to do so by a second officer using a rolling roadblock maneuver. After considering Golden's explanation for her failure or refusal to stop, the jury nevertheless concluded that she acted wilfully in violation of OCGA § 40-6-395 (a). We find the evidence was sufficient for a rational trier of fact to find that all the elements of the statute were proved beyond a reasonable doubt, and that Golden was guilty of wilfully failing or refusing to stop her car in violation of OCGA § 40-6-395 (a). *Cook v. State*, 180 Ga. App. 877, 878-879 (350 SE2d 847) (1986).

Under OCGA § 16-10-24 (a), "a person who knowingly and wilfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Unlike the felony obstruction provisions of OCGA § 16-10-24 (b), which require proof that the obstruction was accomplished "by offering or doing violence to the person" of the law enforcement officer, the misdemeanor obstruction provisions of OCGA § 16-10-24 (a) do not require

proof of violence, the threat of violence, or the use or threat of force. *Duke v. State*, 205 Ga. App. 689-690 (423 SE2d 427) (1992). It follows that verbal exchanges which convey no threat of force or violence, but which otherwise obstruct or hinder a law enforcement officer in the lawful discharge of his official duties, can authorize a conviction for misdemeanor obstruction under OCGA § 16-10-24 (a). *Duke*, 205 Ga. App. at 690. "Argument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction [or hindrance] element" of OCGA § 16-10-24 (a). *Pinchon v. State*, 237 Ga. App. 675, 676 (516 SE2d 537) (1999).

The evidence shows that Golden was lawfully stopped by the officers using a rolling roadblock after she failed or refused to stop when she was signaled to stop by the pursuing officer. The officers were acting in the lawful discharge of their official duties when they forcibly stopped Golden at 1:30 a.m. and approached her car with weapons drawn for their own safety. Golden was aware that she had been stopped by uniformed police officers, yet she ignored repeated commands by Officer Phillips to open the car door, to exit the car, and to give the officer her driver's license and proof of insurance. Instead, she remained seated in the car, rolled down her window, complained to the officers that she was being harassed, and called 911 to complain about the officers. Whether under these circumstances Golden's refusal to comply with Officer Phillips's repeated commands hindered or obstructed the officer in the lawful discharge of his official duties was for the trier of fact to decide. *Johnson v. State*, 234 Ga. App. 218, 219-220 (507 SE2d 13) (1998). We find the evidence was sufficient for a rational trier of fact to find that Golden was guilty beyond a reasonable doubt of misdemeanor obstruction in violation of OCGA § 16-10-24 (a). Id.

2. There is no merit to Golden's contention that she is entitled to a new trial because her convictions for violation of OCGA §§ 40-6-395 (a) and 16-10-24 (a) were mutually exclusive. Guilty verdicts are mutually exclusive "where a guilty verdict on one count logically excludes a finding of guilt on the other." (Citation and punctuation omitted.) *Jackson v. State*, 276 Ga. 408, 410 (577 SE2d 570) (2003). The offenses set forth in OCGA §§ 40-6-395 (a) and 16-10-24 (a), as charged in this case, had different elements and neither guilty verdict legally or logically excluded the other. *State v. Fuller*, 267 Ga. App. 40, 41-42 (599 SE2d 3) (2004).

3. Golden contends that she is entitled to a new trial because the State injected an irrelevant matter into the trial and deprived her of a fair trial when the prosecutor asked her on cross-examination whether she had filed an ante litem notice that she intended to sue the City of Centerville because of the actions of its police officers in the present case. She contends the trial court erred by failing to sua

sponte instruct the jury to disregard her response that she had filed the notice threatening to sue the City, and erred by refusing to grant her a new trial.

We find no error. The fact that Golden had filed an ante litem notice threatening suit against the City of Centerville based on the actions of its police officers in the incident giving rise to the criminal charges at issue provided a proper basis for cross-examination of Golden regarding her financial interest in the outcome of the trial. *Duitsman v. State*, 212 Ga. App. 348, 349-350 (441 SE2d 888) (1994); *Cunningham v. State*, 240 Ga. App. 92, 93 (522 SE2d 684) (1999).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 23, 2005 — 

*Lane & Jarriel, Thomas F. Jarriel*, for appellant.
*Alan R. Tawse, Jr., Solicitor-General, Arthur J. Creque, Assistant Solicitor-General*, for appellee.