A06A0994. STEPHENS v. THE STATE.
(629 SE2d 565)

BLACKBURN, Presiding Judge.

Following a bench trial, Rodney Lawrence Stephens was convicted of possession of cocaine with the intent to distribute. He appeals, arguing that the court erred in denying his motion to suppress evidence obtained when he and his car were searched following his arrest. Because the police lacked probable cause to arrest Stephens, we reverse.

In reviewing the denial of a motion to suppress, we construe the evidence in favor of the trial court's ruling when there is conflicting evidence. See *Tate v. State*.[1] However, where (as here) the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, we review de novo the trial court's application of the law to the undisputed facts. *Vansant v. State*.[2] See *State v. Calhoun*.[3]

The undisputed facts here show that based on a house alarm going off late at night, uniformed police in marked patrol cars were investigating a burglary at a residence located near the end of a dead-end street. The residence's owner was not present. A nonuniformed detective arrived in his unmarked car and assisted in the investigation by interviewing the next-door neighbor on her porch. During the interview, the detective observed a vehicle with its headlights off crest the hill at the top of the street and stop. No one exited the vehicle.

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).
[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[3] *State v. Calhoun*, 255 Ga. App. 753, 755 (566 SE2d 447) (2002).

Finding this suspicious, the detective entered his own vehicle to go investigate the unlighted car. Once the detective's brake lights shone, the driver of the suspicious car (Stephens) backed his car away from the scene, turned on his headlights, turned his car around, and exited the neighborhood. The detective followed, activating the blue strobe lights located inside his vehicle, the vehicle's "wig-wag" headlights, and the vehicle's siren. Stephens did not pull over, instead continuing at a lawful rate of speed down local streets. The detective, who was not in uniform, called one of the uniformed officers for backup. At one point, Stephens crossed over some double yellow solid lines to pass some vehicles which had pulled off to the side.

With his blue strobe lights and siren activated, a uniformed officer in a marked police car eventually caught up to the two vehicles and passed the detective's unmarked vehicle. The officer had witnessed no traffic violations. As soon as the officer got behind Stephens, Stephens immediately pulled over and stopped. The officer and the detective exited their vehicles and approached Stephens's car, with the officer going to the driver's door and the detective to the passenger door. As the driver's door began to open, the officer immediately arrested Stephens for eluding an officer; the officer pulled Stephens from the car, placed him on the ground, and handcuffed him. The detective came around the car and assisted in the arrest. After searching Stephens and finding $4,629 in cash, the officer placed him into the back of the patrol car without asking him any questions. Another officer who arrived at the scene of the arrest did an inventory search of Stephens's vehicle, which was being impounded. He found a large brick of cocaine in the trunk, weighing 994 grams. Police determined that Stephens was the owner of the burgled residence.

With Stephens in custody, the arresting officer the next day swore out an arrest warrant on Stephens, accusing him of trafficking in cocaine and of attempting to elude an officer. The prosecutor eventually reduced the charges to one count of possessing cocaine with intent to distribute. Stephens moved to suppress the cash found on his person and the cocaine found in his car, arguing that police had no probable cause to arrest him for eluding an officer and therefore were not justified in conducting the search of his person and of his car. The court denied the motion. Based on the above evidence, Stephens was convicted in a bench trial and now appeals.

There is no doubt that the police were justified in pulling Stephens over to conduct an investigative stop. The suspicious circumstances of his stopping his unlighted vehicle on the dead-end street late at night to observe the police investigating the recent burglary, and of fleeing when the detective sought to approach him,

provided police with an articulable suspicion of criminal activity. See *Fitz v. State*;[4] *Popham v. State*.[5]

However, conducting no investigation, the uniformed officer immediately arrested Stephens for eluding the detective and placed him in custody. The subsequent warrantless search of Stephens's person incident to the arrest and the inventory search of his vehicle were only justified if the arrest was valid. See generally OCGA § 17-5-1. The warrantless arrest here would only be valid if probable cause to arrest existed at the time the arrest was made. *Harvey v. State*.[6] Probable cause existed only if, when the arrest was made, the facts and circumstances known to the arresting officer were sufficient to warrant a prudent person in believing that Stephens had committed or was committing an offense. Id. This is an objective test. See generally 2 LaFave, Search & Seizure 35, § 3.2 (b) (4th ed. 2004).

Here, both the arresting officer and the assisting detective testified that the only crime for which Stephens was arrested was his attempting to elude the detective, who was pursuing Stephens in his unmarked car. OCGA § 40-6-395 (a) sets forth the elements of this crime:

> It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. *The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.*

(Emphasis supplied.) See OCGA § 40-8-91 (markings shall be in letters not less than four inches in height). Where the record "is devoid of any evidence that the officer who signaled appellant to stop was in uniform prominently displaying his badge of office or that the officer's vehicle was appropriately marked showing it to be an official police vehicle," the essential elements of the crime are not present. *Phillips v. State*.[7]

Here, the pursuing detective admitted and the arresting officer knew that the detective, who was not in uniform, was driving an

[4] *Fitz v. State*, 275 Ga. App. 817, 819 (1) (622 SE2d 46) (2005).

[5] *Popham v. State*, 214 Ga. App. 775, 776 (449 SE2d 150) (1994).

[6] *Harvey v. State*, 266 Ga. 671, 672 (469 SE2d 176) (1996).

[7] *Phillips v. State*, 162 Ga. App. 471 (2) (291 SE2d 776) (1982).

unmarked vehicle. Accordingly, the arresting officer had no probable cause to believe that Stephens's failure to pull over in response to the detective's signals was a violation of OCGA § 40-6-395 (a). See *Phillips*, supra. Compare *Golden v. State*[8] (pursuing officer was uniformed and driving a marked police vehicle); *Smith v. State*[9] (same). When the marked vehicle with its activated lights appeared behind Stephens, he immediately pulled over. See *Johnson v. State*[10] (promptly stopping for marked vehicle shows no violation of OCGA § 40-6-395).

Citing *Jones v. State*[11] and *Banks v. State*,[12] the State seeks to avoid this conclusion by arguing that flight plus suspicious circumstances alone always constitutes probable cause for a warrantless arrest for some crime. This generalized approach, however, ignores that, unlike reasonable suspicion of general criminal activity (which justifies an investigative stop), probable cause for arrest requires that the particular crime be specified and that therefore some circumstances reflecting the elements of that crime must be present. See *Bothwell v. State*[13] (*Terry* stop "can be based on a showing of 'reasonable suspicion' to believe that criminal activity is afoot rather than the more rigorous standard of 'probable cause' to believe that a particular crime has been committed"); *Aguero v. State*[14] (same). Compare *Jones*, supra at 868 (circumstances showed that defendant was apparently transporting illegal drugs); *Banks*, supra at 281-282 (2) (evidence pointed to possession of illegal drugs). Here, the circumstances of Stephens's low-speed flight from the detective did not indicate evidence of a particular crime and certainly (in light of the detective's unmarked car and lack of uniform) was not evidence of attempting to elude an officer.

The State next claims that Stephens may have committed a traffic violation when he crossed over the double yellow line. The State correctly maintains that a traffic violation in the presence of an officer may justify an arrest, which would authorize the subsequent searches. See *State v. Lowe*;[15] *Ridgeway v. State*;[16] *Baker v. State*.[17] But the State ignores the uncontroverted testimony of the arresting

---

[8] *Golden v. State*, 276 Ga. App. 538, 541 (1) (623 SE2d 727) (2005).

[9] *Smith v. State*, 237 Ga. App. 616, 619 (2) (516 SE2d 319) (1999).

[10] *Johnson v. State*, 246 Ga. App. 197, 200 (2) (540 SE2d 212) (2000).

[11] *Jones v. State*, 195 Ga. App. 868, 869 (2) (395 SE2d 69) (1990).

[12] *Banks v. State*, 187 Ga. App. 280, 282 (1) (370 SE2d 38) (1988).

[13] *Bothwell v. State*, 250 Ga. 573, 576 (2) (300 SE2d 126) (1983).

[14] *Aguero v. State*, 169 Ga. App. 462, 464-465 (2) (313 SE2d 735) (1984).

[15] *State v. Lowe*, 263 Ga. App. 1, 2 (587 SE2d 169) (2003).

[16] *Ridgeway v. State*, 205 Ga. App. 218, 219 (422 SE2d 4) (1992).

[17] *Baker v. State*, 202 Ga. App. 73, 74-75 (1) (413 SE2d 251) (1991).

officer and of the detective that the arrest here had nothing to do with any traffic violation but was solely for the alleged attempted elusion of the detective. Moreover, at the time of the arrest, the arresting officer knew nothing of this alleged traffic violation, which was known only to the pursuing detective. See OCGA § 17-4-20 (a) ("[a]n arrest for a crime may be made by a law enforcement officer . . . without a warrant if the offense is committed in such officer's presence or within such officer's immediate knowledge"). Accordingly, the State's arguments must fail.

Because the undisputed evidence establishes that the arresting officer had no probable cause to believe that Stephens had committed the crime of eluding an officer under OCGA § 40-6-395 (a), the arrest was invalid and therefore the subsequent search of Stephens's person and the inventory search of his car were illegal. Accordingly, we are constrained to hold that the court erred in not suppressing the evidence obtained during these searches. See *Salter v. State*.[18] The conviction based on this evidence is therefore reversed.

*Judgment reversed. Mikell and Adams, JJ., concur.*

DECIDED APRIL 7, 2006.

*Richard O. Allen*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Assistant District Attorney*, for appellee.

---

[18] *Salter v. State*, 198 Ga. App. 242, 243-244 (1) (401 SE2d 541) (1990).