S06A0137. HARBUCK v. THE STATE.
(631 SE2d 351)

BENHAM, Justice.

Appellant Tanya Renae Harbuck was convicted in a jury trial of violating OCGA § 40-6-395 (a), which makes it unlawful

> for any driver of a vehicle wilfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked show-ing it to be an official police vehicle.

Her earlier conviction in a bench trial for "fleeing or attempting to elude an officer" was overturned on appeal because the State was unable to show a knowing, voluntary, and intelligent waiver of appellant's right to a jury trial. *Harbuck v. State*, 263 Ga. App. XXVI (A03A0940, decided 9/22/03) (unpublished opinion). In the current appeal, Harbuck contests, among other things, the constitutionality of the statute she was found guilty of violating.

A Villa Rica police officer testified he saw Harbuck's car stopped in traffic in the left lane at a Villa Rica traffic light and then saw it proceed to make a left turn after the light turned red. He followed Harbuck's car through downtown Villa Rica and, two miles from the traffic light, pulled in behind her vehicle and turned on his vehicle's

blue lights and siren. The officer testified his patrol car's video camera was activated when he turned on his vehicle's blue lights, and the videotape of him following Harbuck was introduced into evidence. Due to mechanical problems, the siren stopped after a few seconds, but the officer continued to follow Harbuck with blue lights flashing. Harbuck pulled over in a restaurant parking lot several miles later, and the officer approached her car. Harbuck refused to roll down her window or unlock her car door and drove off. The officer resumed following her and, in response to his radioed messages, Douglas County deputy sheriffs and Douglasville officers laid spike strips on the road. When Harbuck ran over the strips, they punctured all four of her tires, stopping her car. She was removed from her vehicle by police who had to knock out a car window, unlock the door, and unbuckle her seatbelt to do so.[1] A Douglas County deputy sheriff testified the blue lights of the Villa Rica officer's car as well as another police vehicle behind Harbuck were flashing as Harbuck approached the spike strips.

Harbuck testified she was driving her mentally disabled sister home from a church bible study session. Nearly five miles after the traffic light she realized there was a car following her with "very bright lights on." She became nervous, called her boyfriend on her cellular phone, and followed his suggestion that she pull over so the trailing car could pass her. She testified on cross-examination she assumed the car with bright lights was driven by a police officer. After she pulled over and while she was still on the phone, the car pulled in behind her and the driver exited his vehicle, yelling at her to unlock the door and get out of the car. He struck the car and shined a flashlight in her face, making her unable to see who he was. Harbuck then called 911 and drove away. She testified she saw no blue lights and heard no siren. She testified she agreed with the suggestion of the 911 operator to pull over at another lighted area where there were people, but found no such place.[2] She testified her thoughts were to "try this again because obviously it seems like, you know, it's a police officer, even though he's acting kind of crazy." She denied seeing a second police car following her, stating "I just knew there was an officer back there." She saw a roadblock and officers with drawn guns and stopped her car.

---

[1] The officer testified he was formally reprimanded for not turning on his body microphone when he approached Harbuck's car, for not stopping the Harbuck vehicle closer to the traffic light, and for not stopping the chase when told to do so.

[2] An audiotape of appellant's conversation with the Douglas County 911 operator was played to the jury but was not taken down and transcribed by the court reporter, and the audiotape was not sent to this Court as part of the appellate record.

Appellant's boyfriend (now husband) testified appellant phoned him to seek advice because there was a car with its bright lights on following her. Over the phone, the witness heard a male voice repeatedly tell Harbuck to unlock the door and get out of the car, a tapping/banging noise, and Harbuck declining to follow the man's instructions. Harbuck then told her boyfriend she was hanging up in order to call 911 and report the man, and was leaving the parking lot. The boyfriend acknowledged having seen the videotape made by the officer's dashboard camera and that it depicted a blue light flashing about every three or four seconds.

1. The State established that Harbuck was driving a car and a uniformed police officer driving a marked police vehicle pulled in behind Harbuck's moving vehicle, turned on his vehicle's blue lights, thereby giving Harbuck a visual signal to stop, and she failed to stop. Although she eventually stopped in a parking lot, she departed before the officer could conduct an inquiry and drove for several more miles while being followed by several police cars with blue lights flashing until she was stopped by the effect of the spike strips. Whether Harbuck's failure to stop was wilful was a question for the jury "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act." *Cornwell v. State,* 246 Ga. App. 686, 688 (2) (541 SE2d 101) (2000). The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of fleeing and eluding beyond a reasonable doubt. *Golden v. State,* 276 Ga. App. 538 (1) (623 SE2d 727) (2005). In light of the evidence, the trial court did not err when it denied appellant's motion for directed verdict of acquittal. *Pye v. State,* 274 Ga. 839, 840 (2) (561 SE2d 109) (2002) (appellate court applies "sufficiency of the evidence" test when reviewing a trial court's denial of a motion for directed verdict).

2. Appellant maintains the trial court erred when it denied her motion to quash the accusation for alleged prosecutorial misconduct.[3] "[A] motion to quash '(is) not a proper method for attacking an

---

[3] The misconduct alleged on appeal is the "destruction" of the audio portion of the videotape made by the chasing police officer's dashboard camera. While the videotape begins recording upon activation of the vehicle's blue lights, audiotaping begins when the officer manually activates a chest microphone, an act the officer testified he failed to do, resulting in a silent videotape. The motion to quash filed by appellant alleged the chasing officers had made audio and videotapes of the incident and had refused to produce the tapes or had destroyed the tapes. At the evidentiary hearing on the motion, appellant's counsel acknowledged the motion had been filed prior to his receipt of the videotape produced by the dashboard camera and, at the time of the hearing, appellant contended only that the videotape had been altered. Through the testimony of appellant and her boyfriend, appellant suggested the videotape had been altered to depict the stop at the restaurant to be of less duration than it actually was by removal of a portion of the video depicting some of the officer's actions while standing at appellant's car door. The trial was delayed a month in order for appellant to attempt to confirm her suspicions about the videotape by obtaining the services of a video expert.

indictment or accusation for any defect not appearing on its face.' " *Hughes v. State*, 266 Ga. App. 652, 655 (3) (b) (598 SE2d 43) (2004). Inasmuch as appellant's motion to quash contested the authenticity of the State's evidence and did not attack the accusation for a defect appearing on its face, the trial court did not err when it denied the motion.

3. Appellant contends OCGA § 40-6-395 (a) violates Article I, Section II, Paragraph III of the Georgia Constitution as an unlawful delegation of legislative authority because its lack of standards for measuring driver compliance with a police directive to stop results in a violation of the statute being defined by the judgment of a member of the executive branch of government, the police officer giving the directive to stop.

"The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." 1983 Ga. Const., Art. I, Sec. II, Par. III. The legislative branch enacts the law, the judiciary interprets those laws and the executive branch enforces those laws until they are amended or held to be unconstitutional. *Adams v. Ga. Dept. of Corrections*, 274 Ga. 461, 462 (553 SE2d 798) (2001). The General Assembly has been granted the legislative power of the state (1983 Ga. Const., Art. III, Sec. I, Par. I[4]) and, by enacting OCGA § 40-6-395 (a), the General Assembly made criminal a vehicle driver's conduct in fleeing or attempting to elude a pursuing police officer by wilfully failing or refusing to stop when given a visual or audible signal to stop by an officer. The failure to include within the statute the amount of time that must elapse or the distance that must be traveled before the driver's failure to stop becomes criminal conduct is not an improper delegation of legislative power to the law enforcement officer who arrests a driver or issues a citation charging the driver with violating the statute. Compare *Howell v. State*, 238 Ga. 95 (230 SE2d 853) (1976) (legislative enactment making criminal a violation of "any of the rules or regulations promulgated by [an executive branch] commission" was held to be an improper delegation of legislative power), with *Dept. of Transp. v. City of Atlanta*, 260 Ga. 699 (1) (398 SE2d 567) (1990) (legislative authority may be delegated provided the General Assembly has provided sufficient guidelines for the delegatee). By acting on his determination that he had probable cause to believe a crime was being committed, the officer was not called upon to exercise the legislative function of defining what constitutes a crime, but the

---

[4] "The legislative power of the state shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives."

executive branch function of enforcing the law. Accordingly, OCGA § 40-6-395 (a) is not an unconstitutional delegation of legislative authority.

4. Appellant also complains OCGA § 40-6-395 (a) is unconstitutional because it fails to include within it a provision for the exercise of the "fundamental right" of self-defense. We are unaware of a constitutional requirement that a statute criminalizing certain conduct must contain a statement that a justification defense may be asserted, and we believe such a requirement is unwarranted given the statutory defense that "[t]he fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct." OCGA § 16-3-20. Appellant was permitted to present evidence justifying her conduct, and the trial court instructed the jury that justification was a defense and could be claimed "when the person's conduct is justified for any reason under the laws of this state or in all other instances based on similar reason and justice." OCGA § 16-3-20 (5), (6). OCGA § 40-6-395 (a) is not unconstitutional for failing to have within it a justification defense.[5]

5. Appellant contends her motion in arrest of judgment should have been granted because the State Court of Douglas County did not have subject-matter jurisdiction to impose criminal sanctions on her. The State Court of Douglas County has jurisdiction, within the territorial limits of Douglas County, over the trial of criminal cases below the grade of felony. OCGA § 15-7-4 (a) (1). That jurisdiction includes misdemeanor violations of the Uniform Rules of the Road (*Diamond v. State*, 151 Ga. App. 690 (1) (261 SE2d 434) (1979)), of which OCGA § 40-6-395 (a) is one. Inasmuch as it was established that the portion of Villa Rica in which the offense was alleged to have occurred was in Douglas County, the State Court of Douglas County had subject-matter jurisdiction of the case. Accordingly, the denial of the motion in arrest of judgment was not error.

6. Appellant complains the trial court erred when it did not grant the motion in which appellant sought to bar her prosecution on double jeopardy grounds. Appellant asserts the prosecutor was proceeding in the re-trial on the offense of "wilful failure or refusal to stop for a police officer" and contends she could not be tried for that offense in the second prosecution because it was an offense for which she was placed in jeopardy in the bench trial when she was tried for "fleeing

---

[5] Appellant also asserts the statute is unconstitutionally vague due to its failure to contain standards to measure driver compliance. In support of her contention, appellant cites her argument concerning the failure of the statute to include a "self-defense" exception. Inasmuch as that argument does not support an allegation that the statute is unconstitutionally vague because it does not contain standards by which compliance can be measured, we do not address appellant's assertion.

and eluding," though the State elected not to pursue the "wilful failure and refusal to stop" in the first trial. See OCGA § 16-1-7 (b) (several crimes arising from the same conduct known to the prosecuting officer and within the jurisdiction of a single court must be prosecuted in a single prosecution).

Assuming arguendo appellant's position that the statute sets out two distinct offenses, appellant was tried both times on an accusation charging her with fleeing and eluding an officer and was found guilty and sentenced both times for fleeing and eluding. Since she was not found guilty of "wilful failure to stop," her contention that she could not be tried in the jury trial for "wilful failure to stop" is moot. See *Poole v. State*, 175 Ga. App. 374 (2) (333 SE2d 207) (1985) (where defendant not found guilty of offense, allegation that double jeopardy was violated in prosecuting him was rendered moot). See also *Smith v. State*, 278 Ga. App. 315 (3) (628 SE2d 722) (2005) (defendant's contention that second trial violated double jeopardy rendered moot by appellate court's determination defendant was entitled to directed verdict of acquittal on charge).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 12, 2006 —
RECONSIDERATION DENIED JULY 14, 2006.

*Arthur F. Millard*, for appellant.
*Gregory R. Barton, Solicitor-General*, for appellee.