## A07A1508. HAMPTON v. THE STATE.
### (652 SE2d 915)

ANDREWS, Presiding Judge.

Having been convicted by a jury of one count of felony obstruction of an officer (OCGA § 16-10-24 (b)) and operating a vehicle without a working tag light (OCGA § 40-8-23), Randall Lamar Hampton appeals from the trial court's denial of his motion for new trial, challenging the sufficiency of the evidence, denial of his motion in limine regarding statements made by him, and his sentencing as a recidivist.

1. In his first and fourth enumerations of error, Hampton argues that the trial court erred in denying his motion for directed verdict on the ground that Deputy Rownd was not lawfully discharging his duty as required by OCGA § 16-10-24 (b) and that the evidence was insufficient to show that he offered violence upon the officer. They are considered together.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. Thus, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. We determine only the legal sufficiency of the evidence adduced below and do not weigh the

---

[12] See *Shiver v. State*, 276 Ga. 624, 626 (4) (581 SE2d 254) (2003).

evidence or assess the credibility of the witnesses. Our inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Souder v. State*, 281 Ga. App. 339, 341 (1) (636 SE2d 68) (2006).

So viewed, the evidence was that Cherokee County Sheriff's Deputy Rownd was on duty observing traffic for violations at approximately 3:45 a.m. on September 16, 2003. Hampton was driving northbound on I-575 when Deputy Rownd observed that his truck had no operational tag lights. Deputy Rownd caught up with Hampton and executed a traffic stop. The deputy told Hampton why he had been stopped and asked for his driver's license and insurance card, which Hampton provided. Deputy Rownd returned to his patrol car and checked the status of Hampton's license and tag, which came back valid. Deputy Rownd, having decided to give Hampton a warning, turned off his videotape, returned to Hampton, and gave him back his license and insurance card. The deputy told Hampton that the bulbs for tag lights were inexpensive and would keep him from being pulled over.

As Hampton returned his license to his wallet, Deputy Rownd noticed a Georgia probation card flip over face up in the wallet. Upon seeing the card, Deputy Rownd asked Hampton if he was on probation, to which Hampton responded affirmatively. Asked what he was on probation for, Hampton answered "cocaine." Deputy Rownd then asked Hampton if he would mind if he searched him for contraband and/or cocaine and Hampton instantaneously consented. Hampton acknowledged at trial that he had been asked "if I minded him searching me and I told him, no, I had no problem with that. . . ." Hampton also testified that the question was asked four or five seconds after his license was returned.

Hampton then got out of his truck, turned his back to Deputy Rownd, and put his hands in his pants pockets. The deputy then grabbed Hampton's wrists and told him to remove his hands from his pockets. Deputy Rownd said that he grabbed Hampton's wrists for his own safety.

> I don't know if he's got a knife, a gun, drugs, . . . anything that can hurt [me]. . . . And with his hands in his pockets before I could gain — get that consensual pat down for narcotics and contraband that he gave me, I had no idea what he was going for. The number one killer of police officers is traffic stops.

Hampton said he was getting his money, but Deputy Rownd told him he did not need any money. At this point, Hampton removed his right hand from his pocket and placed it on the bed of the truck.

Hampton then removed his left hand from his pocket, but instead of placing it on the truck, Hampton put his hand straight to his mouth. Based on his experience, Deputy Rownd believed that Hampton was attempting to put evidence or contraband in his mouth. In an attempt to prevent this, Deputy Rownd put his arm around Hampton's neck to prevent him from swallowing and directed him to spit the substance out.

In the ensuing struggle, Hampton and Deputy Rownd fell over the guardrail and 30 to 50 feet down an embankment. Both regained their footing at the bottom of the embankment and Deputy Rownd sprayed Hampton with pepper spray in an attempt to control him. Hampton charged the deputy through the cloud of pepper spray, contaminating them both. Hampton then began moving away from Deputy Rownd, who believed he was trying to escape. After calling for backup and reporting the chase, Deputy Rownd pursued Hampton. At no point did Hampton submit to his authority or obey his commands.

After catching up to Hampton, Deputy Rownd struck him with his hand, but Hampton continued to struggle. Hampton got up and confronted Deputy Rownd with aggression. Deputy Rownd pulled out his Asp baton and told Hampton he would strike him if he did not comply with his orders. In response, Hampton "[s]tood up and turned towards me as if to take a fighting stance. . . ." After continuing to struggle, Deputy Rownd managed to get one handcuff on one of Hampton's wrists, but Hampton got away and ran.

The deputy caught up with Hampton and continued to struggle with him. At one point, Hampton ended up with both cuffs of the handcuffs on one wrist. As the struggle continued, Hampton "raised up and head butted me just under my chin and my chest." Finally, two backup officers arrived and all three officers were able to handcuff Hampton.

Hampton argues that, because the traffic stop had ended, Deputy Rownd needed probable cause or articulable suspicion of another offense or valid consent to search. He further argues that, because the continued detention was illegal, his consent was invalid. We disagree.

There was probable cause for the initial stop, based on the officer's observance of a traffic violation, the nonfunctioning tag light. *Navicky v. State*, 245 Ga. App. 284, 285 (1) (537 SE2d 740) (2000).

Once the vehicle was lawfully stopped, the officer was allowed to ask for the driver's consent to search the car. See *Stokes v. State*, 238 Ga. App. 230, 233 (518 SE2d 447) (1999). No additional probable cause or articulable suspicion was required to simply ask the question. Id.

"Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . and request consent to search — as long as the police do not convey a message that compliance with their requests is required." (Citations and punctuation omitted.) *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992).

*State v. Milsap*, 243 Ga. App. 519, 520 (528 SE2d 865) (2000).

The request to search came immediately upon Deputy Rownd's return to Hampton of his license and insurance card and did not extend the detention. See *State v. Benjamin*, 266 Ga. App. 205, 206 (2) (596 SE2d 623) (2004); *Evans v. State*, 262 Ga. App. 712, 715 (1) (a) (586 SE2d 400) (2003); *White v. State of Ga.*, 258 Ga. App. 700, 702 (2) (574 SE2d 892) (2002) (physical precedent only); *Navicky v. State*, supra.

2. In his second enumeration of error, Hampton argues that the trial court improperly denied his motion in limine seeking to exclude from evidence any mention of his probation and the offense for which he was on probation.

The trial court concluded that Hampton's statements to Deputy Rownd regarding his probation were res gestae. Under OCGA § 24-3-3, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." "A trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered will not be disturbed on appeal unless that determination is clearly erroneous." (Punctuation omitted.) *Barrow v. State*, 269 Ga. App. 635, 639 (7) (605 SE2d 67) (2004).

Here, as noted by the trial court, "the conduct of the officer flows very directly from the statements made during the consensual encounter[,]" and were therefore part of the res gestae.

It is well established that "[a]ll circumstances with an accused's arrest are admissible if they are shown to be relevant. This is so even if the evidence incidentally puts the accused's character in issue." (Citation omitted.) *Sweet v. State*, 278 Ga. 320, 325 (602 SE2d 603) (2004). See also *Adkins v. State*, 280 Ga. 761, 763 (3) (632 SE2d 650) (2006). Here, the challenged evidence was a circumstance surrounding the commission of the crime itself. See *Ruiz v. State*, 240 Ga. App. 7, 8 (522 SE2d 503) (1999) (trial court did not err in admitting evidence that the defendant was being arrested for a probation violation when the drugs that formed the basis of the action were found); *Martinez v. State*, 241 Ga. App. 863, 864 (1) (528 SE2d 294)

(2000) (trial court did not err in admitting testimony that the defendant was taken into custody on an outstanding warrant for an unrelated charge).

There was no error.

3. Finally, Hampton contends that he was improperly sentenced as a recidivist because two of the convictions were under the Youthful Offender Act[1] and because Hampton was not represented by an attorney when entering his guilty pleas.

We review this allegation regarding lack of representation utilizing the standard of review set forth in *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999). "[T]he burden of production is on the recidivism defendant rather than the State when the defendant seeks under *Boykin v. Alabama*, [395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969)], to challenge the validity of a prior guilty plea used to enhance a sentence." Id. at 284. The State need only show the existence of the prior guilty plea and that the defendant was represented by counsel. Id. If the defendant was not represented, the State must show a waiver of counsel. Id. "Upon such a showing, the presumption of regularity is then applied and the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea." Id. at 285.

Here, the State introduced certified copies of Hampton's three prior felony convictions for sentencing purposes. The third prior felony shows that Hampton was represented by attorney David Cox during entry of his guilty plea. The first and second prior felony convictions do not show representation by an attorney, but both contain a "Notice of Desire to Plead Guilty and Waiver of Attorney" signed by Hampton. Hampton acknowledged that the signatures were his. These documents contain the following statement:

> I have been informed and I understand that I have the right: ... (d) To be represented by an Attorney or Lawyer, and that if I cannot afford a lawyer, one will be appointed for me by the Court without cost to me. ... I do hereby waive and give up the rights I have as listed above, and do hereby notify the Court that I do so waive and give up same and wish to *Plead Guilty* to the above charges, *and that I wish to do so without having or being represented by a lawyer.*

---

[1] Although the fact that the sentences were under the Youthful Offender Act was the premise of an objection made by Hampton below, no specific ruling was made by the court on this issue and, therefore, there is nothing in this regard for this Court to consider. We note, however, that such sentences are properly used for recidivism purposes. *Lazenby v. State*, 221 Ga. App. 148, 150 (3) (470 SE2d 526) (1996).

(Emphasis in original.)

Although Hampton testified during the sentencing hearing, he recalled very little about the plea proceedings. At one point, he said he could not recall whether he had a jury trial or entered a plea. The trial court found his testimony incredible and concluded that Hampton had failed, under *Nash v. State*, supra at 285, to carry his burden of "produc[ing] some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea." Therefore, the trial court was authorized to find that the State met its burden of proving that Hampton's prior pleas were validly entered. *Hall v. State*, 261 Ga. App. 64, 67-68 (1) (581 SE2d 695) (2003).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED OCTOBER 23, 2007.

*Bray & Johnson, Jonathan A. Kesler*, for appellant.

*Garry T. Moss, District Attorney, Scott T. Poole, Assistant District Attorney*, for appellee.