A08A0963. BLEDSON v. THE STATE.

(670 SE2d 223)

RUFFIN, Presiding Judge.

A jury found Latoya Renee Bledson guilty of fleeing from a police officer.[1] She appeals from the conviction, challenging the sufficiency of the evidence to support the verdict and contending the trial court erred in denying her motion for a directed verdict of acquittal. Because the evidence was insufficient to establish the offense of fleeing from a police officer, we reverse.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[2] Under that standard, we must view the evidence in a light favorable to the jury's verdict.[3] We neither weigh the evidence nor assess witness credibility; rather, we

---

[1] Bledson was also charged with misdemeanor obstruction of a police officer, but the jury found her not guilty of that offense.

[2] *Hampton v. State*, 287 Ga. App. 896 (1) (652 SE2d 915) (2007).

[3] See id.

inquire whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt.[4]

So construed, the evidence shows that Christopher Quinones was wanted on 11 outstanding warrants for, among other things, the aggravated assault of a police officer. On the evening of May 14, 2004, a deputy with the Hall County Sheriff's Department received an anonymous tip concerning the whereabouts of Quinones. The deputy proceeded to the house identified by the tipster, but Quinones was not there. Other individuals at the house, however, informed the deputy that Quinones had left only a few minutes before in a vehicle driven by Bledson. They also provided the deputy with a description of the vehicle and its tag number. The deputy was familiar with Bledson and the vehicle because Bledson had worked at a convenience store that was on the deputy's usual nighttime patrol route.

As the deputy was traveling from another location in his effort to find Quinones, he identified Bledson's vehicle traveling in the opposite direction. Bledson was driving, and Quinones was in the passenger seat. The officer performed a U-turn in his marked patrol car, activated his blue lights and siren, pulled behind Bledson's vehicle, and radioed for backup. Bledson immediately pulled over and stopped her vehicle. Leaving the blue lights and siren activated, the deputy stepped out of his patrol car and waited for backup to arrive. At one point, Bledson exited her vehicle and attempted to approach the patrol car with her license and insurance card, but she returned to her vehicle after the deputy directed her to do so. Otherwise, she remained in her vehicle; the deputy made no other statements to Bledson, nor did he further instruct her in any way. According to the deputy, he never told Bledson to remain at the scene and she was not under arrest when she left.

A few minutes later, as the sirens of other patrol cars could be heard approaching, Quinones exited from the passenger side of Bledson's vehicle and fled on foot. Bledson remained in her vehicle while the deputy ran after Quinones. When they were approximately 20 yards from Bledson's vehicle, Quinones swung his arm back toward the deputy, pointed a handgun at him, and fired five shots. In attempting to evade the bullets, the deputy severed a tendon in his right leg, fell to the ground, and dislocated his right shoulder. Quinones continued to run and escaped apprehension. Bledson immediately drove away from the scene after Quinones fired the shots.

---

[4] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hampton*, supra at 896-897.

After leaving the scene, Bledson drove her car to an apartment complex and called a friend to pick her up. At trial, Bledson testified that she drove to the apartment complex because she was worried that the police might believe she was involved in the shooting. Bledson's friend picked her up, and they "rode around." They did not call 911 or otherwise contact the police to report what had occurred. Bledson's mother then called and informed Bledson that the police were at their home trying to locate her. At that point, Bledson returned home at the request of the police, and she was subsequently arrested, charged, and convicted of fleeing a police officer.

OCGA § 40-6-395 (a) provides that "[i]t shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop." As stated by our Supreme Court, "[a] criminal statute must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted."[5] "Moreover, criminal statutes must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpretations."[6]

Here, there is no evidence that the deputy was in pursuit of Bledson when she left the scene. Bledson had already complied with the officer's signal that she bring her vehicle to a stop; thus, the purpose of the traffic stop had been completed. The record clearly demonstrates that Quinones was the object of the deputy's pursuit, given that the officer chased him when he ran from the vehicle, never instructed Bledson to remain at the scene, and never charged her with any crime other than fleeing and obstruction based upon her departure from the area.[7] Indeed, when asked at trial whether his focus was on Bledson or Quinones, the deputy replied, "I was in search of [Quinones] based on the warrants."

Under these circumstances, Bledson's flight from the scene simply does not equate to fleeing pursuit by an officer, which is what the statute requires.[8] Accordingly, Bledson's conviction for fleeing an officer cannot stand.

---

[5] (Punctuation omitted.) *Maxwell v. State*, 282 Ga. 22, 23 (1) (644 SE2d 822) (2007).

[6] (Punctuation omitted.) *Bradford v. State*, 287 Ga. App. 50, 53 (1) (651 SE2d 356) (2007).

[7] As mentioned above, the State also indicted Bledson for misdemeanor obstruction of an officer "by fleeing after the officer had been shot at," but she was acquitted of that charge.

[8] See OCGA § 40-6-395 (a).

*Judgment reversed. Barnes, C. J., Blackburn, P. J., and Phipps, J., concur. Johnson, P. J., Andrews and Bernes, JJ., dissent.*

BERNES, Judge, dissenting.

I respectfully dissent. The deputy's pursuit of Bledson had not ended at the time she fled from the scene of the shooting. Hence, contrary to the majority's conclusion, the element of pursuit was met in this case, and there was sufficient evidence to convict Bledson of fleeing from a police officer.

Although Bledson initially stopped her vehicle in response to the pursuing deputy, the pursuit did not end at that point. A violation of OCGA § 40-6-395 (a) can occur if the defendant initially stops his or her vehicle in response to the pursuing officer, but then flees before the stop has ended, because at that point the pursuit has not yet come to an end. See, e.g., *Harbuck v. State*, 280 Ga. 775, 777 (1) (631 SE2d 351) (2006); *Davidson v. State*, 237 Ga. App. 580, 581 (2) (516 SE2d 90) (1999). "[A] traffic stop ends when the officer finishes responding to the . . . violation and releases the motorist." *Hendrix v. State*, 273 Ga. App. 792, 794 (1) (616 SE2d 127) (2005). Thus, the pursuit of Bledson's vehicle would have ended only upon the deputy successfully executing the outstanding arrest warrants upon Quinones and releasing Bledson from the scene, neither of which occurred in this case.

The deputy clearly was authorized to stop Bledson's vehicle and execute the arrest warrants. See *Somesso v. State*, 288 Ga. App. 291, 292 (1) (653 SE2d 855) (2007). As such, even though Bledson had not committed a traffic violation and was not under arrest, she was not entitled to simply drive away from the scene at will during the deputy's ongoing investigation. The verdict, therefore, should be affirmed.

I am authorized to state that Presiding Judge Johnson and Judge Andrews join in this dissent.

DECIDED NOVEMBER 21, 2008.

*Robert Kenner, Jr.*, for appellant.
*Lee Darragh, District Attorney, Juliet Aldridge, Assistant District Attorney*, for appellee.