**The STATE of Ohio, Appellant,**

v.

**CULLERS, Appellee.**

[Cite as *State v. Cullers* (1997), 119 Ohio App.3d 355.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15936.

Decided April 25, 1997.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *John J. Amarante,* Assistant Prosecuting Attorney, for appellant.

*John H. Rion,* for appellee.

---

GRADY, Judge.

The state of Ohio appeals, pursuant to Crim.R. 12(J) and R.C. 2945.67(A), from an order of the trial court suppressing evidence seized in a warrantless search of the automobile of defendant-appellee Paul Cullers.

The facts leading to the search and Cullers's subsequent arrest and indictment for aggravated trafficking and having weapons under disability were related by the trial court in its decision and entry. The court stated:

"The court hereby incorporates by reference the testimony of Officer Richard Kraft, Dayton Police Department, as necessary for the determination of the facts herein. The court further notes the following: On November 4, 1995, Officer Kraft observed defendant driving a late model Pontiac Bonneville. The officer testified he observed that the rear license plate was not illuminated as required by R.C. 4513.05 and that the rear license plate did not have the county sticker.

"The officer then stated that he initiated a traffic stop once defendant's vehicle had cleared the intersection of West Riverview and Rosedale. The officer noted that defendant eventually came to a complete stop after proceeding an estimated one hundred fifty feet at an approximate speed of twenty-five miles per hour. In between the time defendant came to a complete stop and the officer approached the vehicle, the officer testified that defendant was making movements, specifically, lifting his body and leaning forward. Following the stop, Officer Kraft approached the driver, defendant, and Officer Bergman approached the passenger. Officer Kraft noted in his testimony that defendant appeared 'extremely

nervous,' but responded appropriately to his request that defendant produce his driver's license; although he could not recall whether defendant had his driver's license in hand when he approached the vehicle or whether defendant retrieved the license in his presence.

"Officer Bergman removed the passenger, who was without identification, and placed him in the rear of the police cruiser. Officers Kraft and Bergman approached defendant and requested that defendant step out of the car. After the third request defendant reluctantly stepped out of the vehicle and was taken to the rear of his vehicle. The officer denied that defendant was under arrest at this time, no traffic citation had been issued and defendant's passenger remained in the rear of the police cruiser. The officer approached the driver's side of the vehicle searched under the seat and found a four-inch-by-six-inch leather purse. The officer stated that the purse felt heavy as though it may contain a weapon. The officer proceeded to open the purse finding a loaded hand gun and crack cocaine. The defendant seeks to have this evidence suppressed as there was no constitutional basis for the stop and search of defendant."

In analyzing the issues presented by appellee's motion to suppress, the trial court held that the stop of his vehicle was justified under the reasonable-and-articulable-suspicion standard of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. However, the court also held that the state had failed to demonstrate that the totality of the facts and circumstances before the officers after Cullers's vehicle was stopped warranted a reasonable and articulable suspicion of specific criminal activity that justified his continued detention and the search of his vehicle under the *Terry* standard. On that basis, the court suppressed the evidence obtained in the search from use by the state in its prosecution of Cullers.

On appeal, the state presents a single assignment of error, which states:

"The trial court erred by granting appellee's motion to suppress the properly discovered weapon and drugs."

Because Officer Kraft observed violations of the traffic code with respect to illumination of the rear license plate on Cullers's vehicle, the officer possessed probable cause sufficient to permit him to stop the vehicle. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. On that basis, Officer Kraft was authorized to order Cullers and his passenger to step out of the vehicle. *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162. Furthermore, Officer Kraft was authorized to search the passenger compartment of the vehicle for weapons if he possessed a reasonable and articulable suspicion that Cullers or his passenger was dangerous and might gain immediate control of weapons located there when they returned to it. *Michigan v. Long* (1983), 463 U.S. 1032, 103

S.Ct. 3469, 77 L.Ed.2d 1201. Whether he possessed such a suspicion must be determined from the totality of the circumstances before the officer. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044.

With respect to the search of Cullers's vehicle, the trial court wrote:

"The officer testified that he was concerned that defendant may have a weapon and did not want to return defendant to his vehicle for that reason without searching the vehicle, but this court finds that the officer failed to articulate specific reasons for such a suspicion. Although Officer Kraft testified that defendant was lifting his body up and leaning forward, this court finds such movements could be consistent with retrieval of a driver's license out of a driver's rear pocket. More specifically, this court finds that lifting up one's body is not consistent with bending down to place something under the seat."

Officer Kraft testified that before Cullers brought his vehicle to a stop he lifted his body up and leaned forward, in a downward direction, "as though he was either placing something or retrieving something from underneath the front seat." Officer Kraft then told his partner that "we're going to have to be very cautious in approaching this vehicle due to the fact that the driver was making those motions and that he didn't stop right away."

Officer Kraft further testified that Cullers was "nervous" during their encounter, and that when his passenger was patted down prior to being placed in their police cruiser a syringe was found in the passenger's pocket. When Officer Kraft then asked Cullers to step out of the vehicle so that he could search it, Cullers "sat there, and he started to reach down towards the seat, and I said get your hand out, and I pulled his hand back up, placed it on his leg. I then proceeded to tell him three more times to get out of the vehicle. After the third time, the door was open, I grabbed ahold of his upper arm, said, 'step out,' and he came out."

After placing Cullers in the police cruiser, Officer Kraft looked under the seat of Cullers's vehicle and saw a small black leather purse. When he lifted it, Officer Kraft "could feel a heavy metallic object [inside] which felt like a gun." He then opened the purse and found a loaded handgun and crack cocaine.

On cross-examination, Officer Kraft testified that he was not concerned with contraband when he performed his search, but was "more concerned with a weapon." He stated: "I had to search underneath the seat for my safety." He also stated that he searched only underneath the seat in which Cullers had been seated. However, he conceded that the movements he saw Cullers make prior to stopping his vehicle could also be consistent with a person rising from his seat to get his hand inside a pocket to get his license.

The element lacking from the state's proof, in the trial court's view, was an explanation by Officer Kraft of why he suspected that Cullers might have a

weapon under the seat of his vehicle. Perhaps that seemed manifestly clear to the officer, so clear that no more particular explanation was required. Nevertheless, in order to determine the objective reasonableness of the officer's suspicion the court was required to consider the basis of that suspicion, which is a necessary element of the state's proof in resisting a motion to suppress. That proof is not the officer's personal burden, but the state's legal burden, and it has particular application where the suspicion is not readily supported by the evidence because the activity that gives rise to the officer's suspicion is ambiguous or innocuous.

■ The trial court's finding that Cullers's movements in his seat prior to the stop were "not consistent with bending down to place something under the seat" does not resolve whether Officer Kraft's suspicion that Culler had placed a weapon under the seat was a reasonable one. That is an issue which this court is required to review *de novo*. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911. The principal components of that inquiry are (1) a determination of the historical facts leading up to the search of Cullers's automobile, and (2) a decision on the mixed question of law and fact whether the historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion under the *Terry* standard. *Id.*

■ Cullers was nervous after having been stopped for a minor traffic violation. A syringe, an instrument frequently used to inject illicit drugs, was found on his passenger. When Officer Kraft asked Cullers to step out of the vehicle, Cullers attempted to reach under the seat and was restrained from doing so by Officer Kraft. Cullers then had to be told two more times to step out. These additional facts, taken together, warrant a reasonable and articulable suspicion that the officers were in peril of an injury that Cullers might inflict with a weapon that he had hidden under the seat. In that circumstance, a search of the vehicle narrowly limited to an investigation of that suspicion was reasonable. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

We share the trial court's concern that prosecuting attorneys too often fail to ask an officer in a suppression hearing *why* he acted as he did. Perhaps their concern is that the response will fail to demonstrate a justification for a warrantless search. But if that is the case, it is equally unlikely that the court will find a justification on the basis of inferences drawn from the same evidence. Though courts are expected to give some deference to an officer's judgment, that is much more readily done if the basis for that judgment is explained, if only on the basis of the officer's experience. It is the prosecutor's function to elicit that explanation, not the officer's to volunteer it.

The state's assignment of error is sustained.  The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN and WOLFF, JJ., concur.