STATE OF NORTH CAROLINA v. JAMES DONOVAN FORD, Defendant

No. COA10-470

(Filed 21 December 2010)

**Search and Seizure— traffic stop—inoperable tag light—reasonable suspicion**

The trial court properly denied defendant's motion to suppress evidence of drugs and a firearm found after a traffic stop where defendant was stopped at night for having an inoperable tag light. The trial court's finding that the officers saw an on-going equipment violation supported the trial court's conclusion that the officers had reasonable suspicion to stop defendant's vehicle.

Appeal by defendant from judgment entered 25 January 2010 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 November 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Jay L. Osborne, for the State.*

*Mercedes O. Chut for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant James Donovan Ford appeals from the denial of his motion to suppress evidence seized during a traffic stop. Defendant contends that the police officers that stopped him lacked reasonable suspicion to conduct the stop, and thus the evidence seized was the product of an unconstitutional search and should have been suppressed. We conclude, based on the totality of the circumstances, that the officers had reasonable suspicion to believe that defendant committed a traffic violation supporting the traffic stop. The trial court, therefore, properly denied defendant's motion to suppress.

Facts

Officers Lance Fusco and Shane Strayer, with the Charlotte-Mecklenburg Police Department, were patrolling the Eastway area of Charlotte in a marked patrol car during the evening of 15 October 2008. Around 10:00 p.m. that night, the officers saw a gray Chrysler 300 sedan driving in the neighborhood, but did not notice anything unusual about the car. Later that evening, the officers saw the same car "circling around" in the neighborhood and "made a mental note of

it." At approximately 1:45 a.m. on 16 October 2008, they saw the car for the third time, going down Belmont Ave. toward Davidson St. The officers got within 50 feet behind the car to "run the tag[]" to identify the registered owner, but the car's license plate did not "appear to be lit" and they "had to get really close to read the tag." Officer Fusco, who was driving the patrol car, turned off the car's headlights to "verify that [they] couldn't read the tag." After determining that they "couldn't read the tag . . . at fifty feet," Officer Fusco turned on his blue lights and siren and stopped the gray Chrysler 300, which was driven by defendant.[1] Defendant was cited for failing to maintain a properly functioning tag light. .

During the stop, defendant's car was searched and, as a result of what was found during the search, defendant was charged with possession of a firearm by a felon, carrying a concealed weapon, maintaining a vehicle for controlled substances, possession with intent to manufacture, sell, or deliver a controlled substance, possession with intent to sell or deliver cocaine, possession of marijuana, possession of drug paraphernalia, and having attained habitual felon status. Defendant filed a motion to suppress the evidence obtained as a result of the search, contending that the officers lacked reasonable suspicion to conduct the traffic stop. The trial court conducted a suppression hearing on 2 September 2009, at which both the State and defendant presented evidence. At the conclusion of the hearing, the trial court entered an order from the bench, concluding that the officers had "reasonable articulable suspicion to stop the vehicle" and denying defendant's motion to suppress. Defendant subsequently pled guilty to possession of a firearm by a felon and having attained habitual felon status in exchange for the State's dismissing the remainder of the charges. The trial court consolidated the two charges to which defendant pled guilty and sentenced defendant to a presumptive-range sentence of 110 to 141 months imprisonment. Defendant timely appealed to this Court.

## Discussion

Defendant's only argument on appeal is that the trial court erred in denying his motion to suppress. In reviewing the denial of a motion to suppress, the appellate court determines whether the trial court's findings of fact are supported by competent evidence and whether those findings, in turn, support the court's conclusions of law. *State*

---

1. The Chrysler 300 was a rental car rented for the period 7-16 October 2008 by someone other than defendant from Triangle Rent-A-Car.

**STATE v. FORD**

[208 N.C. App. 699 (2010)]

*v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The court's findings of fact are binding on appeal if they are supported by competent evidence, even if the evidence is conflicting. *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). The court's conclusions of law determining whether an officer had reasonable suspicion is reviewed de novo. *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001).

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Pertinent here, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Reasonable suspicion requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968)).

Reasonable suspicion is a less demanding standard than probable cause, *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645, *cert. denied*, U.S., 172 L. Ed. 2d 198 (2008), and only requires a "minimal level of objective justification, something more than an 'unparticularized suspicion or hunch[,]' " *State v. Steen*, 352 N.C. 227, 239, 536 S.E.2d 1, 8 (2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists. *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

With respect to whether Officers Fusco and Strayer had reasonable suspicion to stop defendant's vehicle on 16 October 2008, the trial court found that: "normal evening and atmospheric conditions" existed at the time the officers pulled behind defendant's vehicle and attempted to read the vehicle's license plate; when Officer Fusco "pulled behind this Chrysler vehicle and turned off the lights on his marked patrol car," there was "either no tail light or a tail light that was not functioning sufficiently [so] that the numbers or numerals on the Chrysler tag were not visible within the statutory requirement set forth in 20-129, subsection (d)"; and that "the officer[s] did ticket the

defendant for the alleged violation" of N.C. Gen. Stat. § 20-129(d) (2009). Based on these findings, the court concluded that Officers Fusco and Strayer had "reasonable suspicion to stop this vehicle."

The stop of defendant's vehicle was premised on his alleged violation of N.C. Gen. Stat. § 20-129(d), which provides, in pertinent part, that every motor vehicle is required to have "[o]ne rear lamp or a separate lamp . . . so constructed and placed that the number plate carried on the rear of [the] vehicle shall under [normal atmospheric] conditions be illuminated by a white light as to be read from a distance of 50 feet to the rear of such vehicle."

Defendant contends that there is insufficient evidence to support the trial court's finding that the rear lamp on defendant's vehicle was either not functioning or not functioning properly to illuminate the license plate so that it could be read from 50 feet. Both Officer Fusco and Officer Strayer testified that they pulled within 50 feet of the rear of defendant's vehicle around 1:45 a.m. and were unable to read defendant's license plate, despite having the patrol car's headlights on. Officer Fusco explained that he then turned off the patrol car's headlights to "verify" his suspicion that the "tag light [wa]s out[.]" Believing that defendant's vehicle's "tag light" was inoperable, the officer's initiated a traffic stop and cited defendant for failing to maintain a properly functioning tag light. This evidence is sufficient to support the trial court's finding that defendant's vehicle's tag light was not functioning properly, in violation of N.C. Gen. Stat. § 20-129(d). *See Draper v. Reynolds*, 369 F.3d 1270, 1275-76 (11th Cir. 2004) (finding sufficient evidence of equipment violation justifying stop where, "[u]nder Georgia law, a tag must be illuminated with a white light so that it is legible from fifty feet to the rear" and sheriff's deputy "testified that he stopped [defendant] because he observed that [defendant]'s tag light was out").

Defendant nevertheless points to the testimony of Tom Myrick, the operations manager for Triangle Rent-A-Car, who stated that the company's inspection records indicated that "everything was fine with the vehicle" when it was rented on 7 October 2009 and when it was returned on 16 October 2009 and that the company had "no records of a burned out taillight on the . . . car[.]" On cross-examination, however, Mr. Myrick testified that although part of the company's inspection process is to inspect each rental car's tag light, its "inspectors [do not] get fifty feet away from the vehicle and inspect the tag light[.]" Mr. Myrick, moreover, indicated that when defense

counsel wrote the company a letter asking for any records indicating whether the vehicle had any problems with burnt-out taillights, he searched the company's records, but did not actually inspect the car.

Contrary to defendant's contention, Mr. Myrick's testimony—that the car was generally "fine" before and after the rental period during which the stop occurred and that the car did not have a documented history of burnt-out taillights—fails to directly controvert Officer Fusco's and Officer Strayer's testimony that defendant's vehicle's tag was not sufficiently illuminated to be legible from 50 feet away on the night of the stop. *See id.* ("At his deposition, [defendant] testified that he picked up his truck at the wrecker yard between eleven a.m. and noon the next day and that his tag light was working. That the tag light was working to an unknown extent during daylight does not directly contradict [the officer]'s position that the registration plate was not clearly legible from fifty feet away on the night of the stop . . . ."); *State v. Taylor*, 694 A.2d 907, 910 (Me. 1997) ("Although [defendant] testified that the light was illuminated when he checked it after leaving the police station, Officer Green testified that he observed from seventy-five feet away that the light was defective. Officer Green's testimony about whether the light was illuminated while [defendant] operated his car is not directly controverted and supports an articulable and reasonable suspicion that a traffic violation was occurring.").

The trial court's finding that Officers Fusco and Strayer observed an on-going equipment violation—the failure to maintain a properly illuminated registration tag—supports the court's conclusion that the officers had reasonable suspicion to stop defendant's vehicle. *See, e.g., United States v. Fox*, 393 F.3d 52, 59 (1st Cir. 2004) (holding that "there was justification for stopping [defendant's] vehicle" where officer "encountered a vehicle that appeared to be without a working plate light"), *vacated on other grounds*, 545 U.S. 1125, 162 L. Ed. 2d 864 (2005); *United States v. Alexander*, 589 F. Supp. 2d 777, 783 (E.D. Tex. 2008) (holding absence of functional tag light on rear of defendant's vehicle justified initial traffic stop under Texas law); *Smith v. State*, 687 So.2d 875, 878 (Fla. Ct. App. 1997) (finding stop "reasonable" where officers "believe[d] that [defendant]'s car had a dim tag light"); *Hampton v. State*, 287 Ga. App. 896, 898, 652 S.E.2d 915, 917 (2007) (holding traffic stop was justified "based on the officer's observance of a traffic violation, the nonfunctioning tag light"); *People v. Sullivan*, 7 Ill. App. 3d 417, 420-21, 287 N.E.2d 513, 515-16 (1972) (holding stop was "proper" where Illinois law required "rear registra-

STATE v. FORD

[208 N.C. App. 699 (2010)]

tion plate [to] be so lighted that it is clearly legible from a distance of fifty feet to the rear" and arresting officers testified that "license plate light was out"); *Walker v. State*, 527 N.E.2d 706, 708 (Ind. 1988) (holding stop of vehicle was justified where license plate was not properly illuminated), *cert. denied*, 493 U.S. 856, 107 L. Ed. 2d 118 (1989); *People v. Nelson*, 266 A.D.2d 730, 732, 698 N.Y.S.2d 797, 799 (N.Y. App. Div. 1999) ("Having observed a traffic infraction—the unlighted rear license plate—[the officer] was justified in stopping defendant's vehicle."); *State v. Cullers*, 119 Ohio App. 3d 355, 358, 695 N.E.2d 314, 316 (1997) (concluding traffic stop was constitutional "[b]ecause Officer Kraft observed violations of the traffic code with respect to illumination of the rear license plate on [defendant]'s vehicle"); *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000) (agreeing with "lower courts' conclusion that the initial stop of [defendant]'s pick-up truck was a legal stop, based upon his violation of the license plate light law"); *State v. Allen*, 138 Wash. App. 463, 470-471, 157 P.3d 893, 898 (Wash. Ct. App. 2007) ("Here, [officer] had a reasonable articulable basis to stop the vehicle for a traffic infraction, the non-working license plate light.").

Defendant devotes a significant portion of his brief to his argument that the traffic stop, ostensibly based on the equipment violation, was a pretext for the officers to search the vehicle as they observed it "circling around" for several hours in a high crime neighborhood. Defendant's pretext argument was rejected by the United States Supreme Court in *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 98 (1996), where the Court held that "the constitutional reasonableness of traffic stops [does not] depend[] on the actual motivations of the individual officers involved." *Accord State v. Barnard*, 362 N.C. 244, 248, 658 S.E.2d 643, 645-46 (2008) ("The constitutionality of a traffic stop depends on the objective facts, not the officer's subjective motivation."). The trial court, therefore, properly denied defendant's motion to suppress.

Affirmed.

Judges CALABRIA and ELMORE concur.