24 A.3d 210

**Gregory WILLIAMS**

v.

**STATE of Maryland.**

**No. 924, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

July 11, 2011.

74

Philip H. Armstrong and Catherine Woolley, Rockville, MD, for appellant.

Susannah Prucka (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: GRAEFF, KEHOE, and WATTS, JJ.

WATTS, J.

Following a trial held from April 19, 2010, through April 20, 2010, in the Circuit Court for Montgomery County, a jury convicted Gregory Williams, appellant, of possession of cocaine, and fleeing and eluding. *See* Md.Code § 5–601 of the Criminal Law Article ("C.L.") (possessing or administering controlled dangerous substance); Md.Code § 21–904(c) of the Transportation Article ("T.A.") (fleeing on foot). On May 18, 2010, the circuit court imposed a sentence of four years' incarceration, with all but eighteen months suspended and three years' supervised probation as to possession of cocaine, and one year concurrent as to fleeing and eluding. On June 9, 2010, appellant noted this timely appeal and set forth the following issues, which we quote:

I. Under the facts and theory of this case, did the trial court err in determining that possession of a controlled dangerous substance is a lesser included offense of distribution of a controlled dangerous substance and so instructing the jury?

II. Did the trial court err by deciding, on its own initiative, without request by either party, to instruct the jury on a lesser included offense of possession of a controlled dangerous substance?

III. Did the trial court err in its instruction to the jury on fleeing and eluding by including incorrect captions as an element of the offense and determining that the statutory requirement of "a vehicle appropriately marked as an official police vehicle" is not an element of the offense?

IV. Was the evidence insufficient to sustain a conviction for fleeing and eluding in violation of section 21–904(c) of the Transportation Article?

For the reasons set out below, we answer Questions I and II in the negative and therefore shall affirm the judgment of the circuit court as to appellant's conviction for possession of cocaine, in violation of C.L. § 5–601. We answer Question IV in the affirmative and shall reverse the judgment of the circuit

court as to appellant's conviction for fleeing and eluding, in violation of T.A. § 21–904(c). We need not address Question III.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw the following pertinent facts from the evidence adduced at trial.

Police Officer Britta Thomas of the Montgomery County Police Department testified that on November 25, 2009, she was conducting surveillance of a Shell gas station opposite the Montgomery Mall in Bethesda, Maryland. At approximately 11:30 p.m., Officer Thomas noticed a white Jeep, with two occupants, in the gas station parking lot, near the convenience store. Officer Thomas testified that she observed the Jeep for about five minutes, before the driver of the Jeep exited the vehicle and entered the store. The driver of the Jeep was subsequently identified as Ricky Mendez ("Mendez").

As Mendez exited the convenience store, appellant approached him. According to Officer Thomas, appellant and Mendez had a brief conversation outside the store and walked together toward a silver sedan, subsequently identified as appellant's vehicle. Officer Thomas observed Mendez enter the right rear passenger seat of the vehicle.

As a witness for the State, Mendez testified that he had arranged to meet appellant, known to him as "Mean," at the Shell gas station to buy cocaine from him, in exchange for $200.00. Mendez testified that when he approached appellant's vehicle, appellant informed him that the "stuff is back there" and instructed him to enter the back seat of the vehicle. According to Mendez, there was another person in the front passenger seat of appellant's car, but he did not speak with this person nor see his face. This person was subsequently identified as appellant's friend, John Sullivan ("Sullivan"). Mendez entered the back seat of the car and saw a baggy of white powder wrapped in a paper towel on the seat. Upon seeing the baggy of white powder Mendez "dropped it" in his

hand and, in exchange, placed $200.00 on the back seat of the car.

Appellant then entered the driver's seat of the car, drove around the station and dropped Mendez off near his Jeep. Mendez immediately exited the gas station in his vehicle. At trial, Mendez testified that he knew the person who sold the drugs to him only as "Mean" and indicated that he did not see "Mean" in the courtroom.

Sergeant William Hill of the Montgomery County Police Department testified that on November 25, 2009, he too was conducting surveillance of the Shell station in plain clothes, in an unmarked car. Sergeant Hill observed appellant's vehicle "lap through slowly around" the gas station before exiting the gas station at a high rate of speed. Sergeant Hill followed appellant's vehicle onto I–270 and observed the vehicle accelerate to speeds of 70 or 75 miles per hour. Sergeant Hill initiated a traffic stop of the vehicle by turning on the police siren and flashing red and blue lights on the windshield visor of his vehicle. Sergeant Hill testified that appellant's vehicle momentarily moved toward the shoulder of the road, then moved back into the travel lane and accelerated to speeds of over 110 miles per hour. Sergeant Hill testified that appellant's vehicle came to a stop after colliding into a curb off the exit ramp for Shady Grove Road, and the vehicle slid into the grass. At this point, both the driver and the passenger of the vehicle exited the vehicle and ran toward the woods. Sergeant Hill gave chase on foot. Sergeant Hill testified that the passenger, Sullivan, tripped attempting to jump over a guardrail, at which point, Sergeant Hill drew his gun, ordered Sullivan to put his hands behind his back and placed him under arrest. Appellant had run about fifty feet ahead, into the woods, so Sergeant Hill called a canine unit and other officers to establish a perimeter.

Police Officer Sharon Sparks of the Montgomery County Police Department answered Sergeant Hill's call and arrived at the scene with her canine partner, Ben. Officer Sparks testified that upon being given a command to track for scent,

Ben led her over the guardrail, and through the woods to a location where appellant was lying face down, attempting to hide. Officer Sparks ordered appellant to show his hands and threatened to release Ben, at which point, appellant cooperated and was placed under arrest. Upon a search of appellant, Sergeant Hill found no drugs but found $200.00 in cash in appellant's pants pocket.

Sullivan, the passenger in appellant's car, testified as a defense witness. Sullivan testified that appellant picked him up from his home on November 25, 2009, at about 9:30 p.m., to go to a Holiday Inn. Sullivan testified that he and appellant had several drinks at the bar of the Holiday Inn and that appellant wanted to leave the bar "to get high." Appellant and Sullivan left for the Shell gas station near Montgomery Mall to meet Ricky Mendez. Sullivan testified that he was in the front passenger seat when Mendez entered the back seat of appellant's sedan. Sullivan testified that Mendez was behind him and he did not have an opportunity to further observe Mendez. When asked on direct examination what observations he made of appellant at the time, Sullivan testified:

[SULLIVAN]: I noticed [appellant], it looked like he had something in his hand and he was looking at it. And I just noticed that he said it's a bad product.

[APPELLANT'S COUNSEL]: I'm sorry, it's bad product?

[SULLIVAN]: Bad product, yes.

[APPELLANT'S COUNSEL]: And based on that, what if anything did you observe [appellant] do?

[SULLIVAN]: Well, he turned the car on, put it in reverse, went on the other side of the Shell gas station, and let Mendez out.

Sullivan testified that he did not observe any money change hands between appellant and Mendez. Sullivan testified it was his understanding that after appellant let Mendez out of the car, he and appellant were traveling up I–270 to locate a different source for the purchase of cocaine.

After Sullivan's testimony, during a bench conference with counsel, the trial court informed counsel of the court's intention to instruct the jury on the lesser included charge of possession of cocaine.[1]  At the close of all evidence in the case, during another bench conference with counsel, the trial court again advised counsel of his intent to instruct the jury on the lesser included offense of possession of cocaine:

> THE COURT:  I told you about the lesser included, which I've determined to include and will.  The question I have, did he give a statement?
>
> \*  \*  \*
>
> [PROSECUTOR]:  But Your Honor, the State would agree that the possession charge would be appropriate if at least what his intent was to possess cocaine according to the defense argument.
>
> [APPELLANT'S COUNSEL]:  And he did possess it for a period of time.
>
> THE COURT:  One person at a time.
>
> [APPELLANT'S COUNSEL]:  I'm sorry.
>
> [PROSECUTOR]:  His own witness testified that in his opinion, [appellant] was holding that cocaine with the intent to keep it, to purchase it, and that he was in possession of the cocaine at that time.
>
> [APPELLANT'S COUNSEL]:  Under that theory, certainly—I'm sorry.
>
> [PROSECUTOR]:  I'm sorry.  It certainly was in his vehicle.  So he had the possession.  For all intents and purposes—
>
> THE COURT:  I'm going to give it.
>
> [APPELLANT'S COUNSEL]:  May I just say that I think that is a lesser included, but that would be a separate charge and for a properly worded lesser included, you have

---

1.  Appellant was charged with distributing a controlled dangerous substance in violation of C.L. § 5–602, fleeing and eluding by failing to stop a vehicle, in violation of T.A. § 21–904(b) and fleeing and eluding by fleeing on foot, in violation of T.A. § 21–904(c).

to first find possession of cocaine and then the intent to distribute. And I don't want to confuse the jury. If we're going to include all the different theories by which you can distribute, I don't want a transfer or exchange theory to be promulgated. I don't want him to go down on distribution because of this—

THE COURT: Well, the question is did he have cocaine? If the jury answers that yes, he's in possession. Then they answer the next question. So—

Prior to closing argument, along with other instructions, the trial court instructed the jury as follows on possession of controlled dangerous substance:

The defendant is charged with the crime of possession of cocaine, which is a controlled dangerous substance. It is unlawful for any person to possess any controlled dangerous substance unless such substance was obtained pursuant to a valid prescription or order from a physician, dentist, veterinarian, scientific investigator, or other person licensed, registered or otherwise permitted to distribute, dispense, administer or conduct research on a controlled dangerous substance, while the person was acting, of course, in the course of his professional practice.

In order to convict the defendant of possession of a controlled dangerous substance, the State must prove— number one, that the defendant knowingly possessed the substance; number two, that the defendant knew the general character or elicit nature of the substance; and number three, that the substance was cocaine. In other words, all three elements must be proven.

Possession means having control over a thing, whether actual or indirect. The defendant does not have to be the only person in possession of the substance. More than one person may have possession of the substance at the same time. A person not in actual possession who knowingly has both the power and the intent to exercise control over a thing, either personally or through another person, has indirect possession.

In determining whether the defendant had indirect possession of the substance, consider all of the surrounding circumstances. These circumstances include the distance between the defendant and the substance, whether the defendant had some ownership or possessory interest in the place or automobile where the substance was found, and any indications that the defendant was participating with others in the mutual use and enjoyment of the substance.

The court instructed the jury on the fleeing and eluding offenses as follows:

In this case, defendant is charged with the crime of fleeing and eluding on foot. Well, let me say there are two theories and two counts that will be on the verdict sheet, and they are slightly different from one another. And I'm going to give you two sets of instructions that are slightly different from each other to get you through understanding the fleeing—there are two fleeing and eluding charges. So one is by foot and one is by automobile.

Defendant is charged with the crime of fleeing and eluding on foot. In order to convict defendant, the State must prove, number one, that the defendant was driving or had been—and I think you can infer—or had been driving a vehicle; that the police gave an audio or visual signal to stop, and that the police officer was in a vehicle appropriately marked as a police vehicle and that the police officer gave an audio or visual signal to stop; or defendant willfully failed to stop the vehicle or fled on foot or eluded the officer by any other means. Visual or audible signal includes a signal by hand, voice, emergency light or siren.

Now, the statute involved here comes from the transportation article which enforces the conduct with the use of automobiles. So you have to take this in the context of the use of an automobile, but that at some point after giving of a signal, that the defendant attempted or did flee by foot. Now, that's contrasted to the next, that defendant is charged with the crime of fleeing and eluding by failing to stop a vehicle. In order to convict defendant, the State must prove one, that the defendant was driving a vehicle;

that the police gave and [sic] audio or visual signal to stop; and three, that the police officer was in uniform. Note, that's not part of the other instruction. When it comes to an automobile, the officer has to be in uniform. And four, that the police officer was prominently displaying his badge or other insignia of office and that five, the police officer in uniform, while prominently displaying his badge or other insignia, gave an audio or visual signal to stop defendant, who willfully failed to stop his vehicle or fled on foot or eluded the officer by other means. Very confusing, but that's the way it's written. That's how the statute is written.

So to clarify, there is a charge of fleeing on foot. It does not require that the police officer who gave the signal to be [sic] in uniform. And then there is a failure to stop the motor vehicle, and that does require that the officer be in uniform, along with the other elements.

During deliberations, the jury delivered a note to the trial court, which read: "If he intends to purchase cocaine and has the money to do so, does that constitute indirect possession even if he does not go through with the purchase?" After consulting with counsel, as to how to respond, the trial court responded with a note, which read: "As you have identified in your question, a person possessing the intent to buy a controlled dangerous substance and who also possesses the money to accomplish a purchase, does not have indirect possession of the illicit drugs." Appellant's counsel agreed with the court's response, stating that the court's response was acceptable to the defense.

Upon receipt of the trial court's response, the jury forwarded another note, which read: "Please reconcile your instruction (as marked) with your response." After consulting with counsel the circuit court replied with a note, which read: "The Court declines to further define or reconcile the Court's instructions." When asked her position as to the court's response, appellant's counsel neither objected to nor agreed with the court's proposed response, but stated:

[APPELLANT'S COUNSEL]: Possession is the exercise of actual or constructive dominion or control over a thing by one or more persons. It requires both a restraining or directing influence over the thing allegedly possessed. So if what they're intimating—if we want to give them—if you want to instruct them any further on that specific point, I can say as an attorney it would be helpful to me to understand it in that sense, that you have to be able to have some restraining or directing influence over it and that is the dominion or control over the thing by one or more persons.

## DISCUSSION

### I.

Appellant argues that the circuit court erred in instructing the jury on possession of cocaine as a lesser included charge of distribution of cocaine because "under the facts of this case" possession of cocaine is not a lesser included offense of distribution. Appellant maintains that, in this case, the jury's obligation was to determine whether appellant was a seller or buyer of cocaine, and that possession is not a lesser included offense of distribution as appellant was only a potential buyer. Relying on the jury notes, appellant contends that the jury rejected the State's theory of the case that appellant sold cocaine to Mendez and convicted based on information as to appellant's desire to purchase cocaine. Appellant also contends that inclusion of the possession charge after the close of the evidence was prejudicial as he was deprived of fair notice of the offense.

The State contends that appellant failed to preserve an objection to the circuit court instructing the jury on the lesser included offense of possession of cocaine. The State maintains that appellant objected "only to the framing of the presented instructions," rather than to the circuit court's giving the instruction to the jury. The State contends that the issue "may not" be preserved for appeal.

The State argues that, if preserved, appellant's complaint is without merit. Relying on *Skrivanek v. State*, 356 Md. 270,

281, 739 A.2d 12 (1999), the State points out that "[t]he Court of Appeals 'has held, consistent with virtually every jurisdiction in the United States which has passed upon the issue, that a defendant, charged with a greater offense, can be convicted of an uncharged lesser included offense.'" Relying on *Hankins v. State*, 80 Md.App. 647, 659, 565 A.2d 686 (1989), the State argues that under the "elements test," "[p]ossession is without question a lesser-included offense of the crime of distribution." Relying on *Smith v. State*, 412 Md. 150, 985 A.2d 1204 (2009), the State maintains that appellant "was properly on notice of the fact that a lesser included offense was being considered and had the opportunity to make whatever argument he wished regarding the lesser charge."

■■■■ It is well settled that a defendant charged with a greater offense can be convicted of an uncharged lesser included offense. *Skrivanek*, 356 Md. at 281, 739 A.2d 12; *Hagans v. State*, 316 Md. 429, 447, 559 A.2d 792 (1989). In *Hagans*, the Court of Appeals explained that:

> The principle that a defendant, charged with a greater offense, can be convicted of an uncharged lesser included offense, has been adopted by virtually every jurisdiction in the United States which has passed upon the issue. Today, in many jurisdictions the doctrine has been codified either by statute or rule.

316 Md. at 447, 559 A.2d 792 (citations omitted) (footnotes omitted). The Court, in *Hagans*, stated:

> Since the rule permitting a conviction on an uncharged lesser included offense was well-established at common law, it is accepted throughout the United States today, and generally promotes a just result in criminal cases, we shall adhere to it.

316 Md. at 448, 559 A.2d 792 (footnote omitted). In *Hagans*, the Court held that although an uncharged lesser included offense is accepted throughout the United States today, at the same time, there are recognized limitations to which the court shall also adhere. 316 Md. at 448, 559 A.2d 792. One

limitation involves the definition of a lesser included offense.[2] *Id.* Maryland appellate courts have applied the "elements test" or "required evidence test" to determine the existence of a lesser included offense. *Id.* at 449, 559 A.2d 792. The Court, in *Hagans,* explained:

> Under the "required evidence" or "elements tests," courts look at the elements of the two offenses in the abstract. All of the elements of the lesser included offense must be included in the greater offense. Therefore, it must be impossible to commit the greater without also having committed the lesser.

316 Md. at 449, 559 A.2d 792. (citations omitted) (footnotes omitted).

In *Anderson v. State,* 385 Md. 123, 132, 867 A.2d 1040 (2005), the Court of Appeals unambiguously held possession of a controlled dangerous substance is a lesser included offense of distribution of a controlled dangerous substance. Applying the "required evidence test," the Court explained:

> In *State v. Woodson,* 338 Md. 322, 329, 658 A.2d 272, 276 (1995), we reached the necessary conclusion that, because every element of the crime of possession is also an element of the crime of possession with intent to distribute and only the latter offense contains an element-intent to distribute-not contained in the former, the two offenses "are deemed the same offense for double jeopardy purposes." In *Hankins v. State,* 80 Md.App. 647, 565 A.2d 686 (1989), the Court of Special Appeals correctly concluded that the same result pertains with respect to possession and distribution.

*Id.* In *Anderson,* the Court stated:

> Criminal Law Art. § 5–601(a)(1) makes it unlawful to possess a controlled dangerous substance. The word "possess"

---

**2.** Other limitations include that, for the doctrine to apply: (1) the lesser included offense must not be more serious in terms of the maximum penalty prescribed by the legislature; (2) the statute of limitations must not have run for the lesser included offense; and (3) the lesser included offense must be of the same general character as the greater offense. *Id.* at 651–52, 943 A.2d 1260.

is defined in § 5-101(u) as to "exercise actual or constructive dominion or control over a thing by one or more persons." Section 5-602(1) makes it unlawful to distribute a controlled dangerous substance....

... It is not possible, under these statutes, to "distribute" a controlled dangerous substance in violation of § 5-602 unless the distributor has actual or constructive possession (dominion or control) of the substance. Thus, possession of the substance distributed is necessarily an element of the distribution. The crime of distribution obviously contains an element not contained in the crime of possession—the distribution—but there is no element in the crime of possession not contained in the crime of distribution. Upon the same analysis used in *Woodson*, therefore, possession and distribution are the "same" offenses for double jeopardy purposes.

385 Md. at 132-33, 867 A.2d 1040.

■ As a threshold matter, prior to addressing the merits, we will examine whether appellant preserved for review the contention that the trial court erred in instructing the jury on the lesser included offense. The State contends that because appellant failed to explicitly articulate an objection to the instruction in its entirety but rather objected to the phrasing of the instruction, the issue is not preserved for review. At the conclusion of the trial court's instructions to the jury, however, the trial court asked whether the parties were satisfied with the instructions and the following colloquy occurred:

[APPELLANT'S COUNSEL]: Your Honor, with respect to the possession, we would again except to the distribution. It's not—and under the State's theory of the case, I don't think that a lesser included simple possession is properly generated and I would also say that I think that—we take exception to the transfer and exchange language in that with the Court's inclusion of the possession count, that it could lead to confusion in the jury as to what constitutes

transfer or exchange and he could be inadvertently convicted on a distribution charge based on that.

THE COURT: Well, I'm satisfied it should be given as stated. I overruled the exception and I said I'd deny the motion and then I overruled the exception then and now. I believe that that's a jury question for it to determine in accordance with whatever the evidence is. But you're preserved. Okay?

In light of appellant's counsel's objection to the phrasing of the instruction and the exchange with the trial court in which the court indicated the issue would be preserved, we conclude that the issue is properly before us.

■ With the issue properly before us, applying the case law discussed above, we conclude that the circuit court did not err in instructing the jury on the lesser included offense of possession of cocaine. Appellant's contention that the trial court erred in instructing the jury on possession is based solely on the premise that notes from the jury demonstrate the jury convicted on testimony that appellant sought to purchase cocaine rather than on the State's theory of distribution. In appellant's sight, the jury notes establish that the jury accepted the defense theory of the case. Appellant's view is not consistent, however, with applicable case law on the sufficiency of evidence for giving an instruction to the jury or the sufficiency of evidence for conviction. As to jury instructions, in *Cost v. State*, 417 Md. 360, 369, 10 A.3d 184 (2010) (citing *Fleming v. State*, 373 Md. 426, 433, 818 A.2d 1117 (2003)), the Court of Appeals recently stated:

On review, jury instructions

[M]ust be read together, and if, taken as a whole, they correctly state the law, are not misleading, and cover adequately the issues raised by the evidence, the defendant has not been prejudiced and reversal is inappropriate. Reversal is not required where the jury instructions, taken as a whole, sufficiently protect[ed] the defendant's rights and adequately covered the theory of the defense.

In this case, the trial court instructed the jury only as to the elements of the possession offense and refrained from making any references to either the State or the defense's theory of the case. In the absence of the jury notes, there would be no question as to the propriety of the trial court's instruction on possession. At oral argument, appellant acknowledged that under the State's theory of the case, possession is a lesser included offense of distribution. The jury instruction given in this case contained language nearly identical to Md. Criminal Jury Instruction § 7.45, entitled Possession (Actual and Constructive). As such, the trial court gave an objective instruction as to the possession offense, which correctly stated the law, and was not contingent on either version of the facts at hand.

■ Insofar as sufficiency of the evidence is concerned, in *Hall v. State*, 119 Md.App. 377, 392–93, 705 A.2d 50 (1998), we explained:

> The standard for our review of the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact-finder. In performing this fact-finding role, the jury has authority to decide which evidence to accept and which to reject. In this regard, it may believe part of a particular witness's testimony, but disbelieve other parts of that witness's testimony. Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused[.] The same standard applies to all criminal cases, including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts.

(Citations omitted.) In *Morgan v. State*, 134 Md.App. 113, 126, 759 A.2d 306, *cert. denied*, 361 Md. 232, 760 A.2d 1107 (2000), this Court held that an "appellate court does not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction." In this case, there was relevant evidence properly before the jury sufficient to sustain a conviction for possession of controlled dangerous substance. Mendez testified unambiguously that the person known as "Mean" directed him into the back of the sedan where a baggy of drugs awaited sale.[3] Defense witness Sullivan testified that, prior to letting Mendez out of the car, appellant held the bag of drugs but determined it to be "bad stuff." Mendez, of course, testified that appellant sold the drugs to him in exchange for $200.00. Without doubt, through testimony, the State generated sufficient evidence to warrant giving the possession instruction and to support the conviction. Under the circumstances, the trial court did not err in instructing the jury on the lesser included offense of possession of cocaine.

As to notice, both parties were given an opportunity to present arguments regarding the possession offense to the jury and arguments to the trial court as to the propriety of giving the instruction. The offense of possession is not so far removed or remote from the offense of distribution of a controlled substance that conviction could not stand for lack of notice. *Hagans*, 316 Md. at 450, 559 A.2d 792 (citing *People v. Cooke*, 186 Colo. 44, 525 P.2d 426, 428–29 (1974)) ("While holding that a defendant charged with possession of a narcotic drug with intent to distribute may be convicted of simple possession, the Supreme Court of Colorado cautioned: 'Mindful of the primacy of notice within the constitutional guarantee of due process of law and of the duty of the courts to safeguard this right, we hold only that, where, as here, the

---

**3.** Appellant did not raise identity as a defense. Appellant acknowledged his encounter with Mendez, but denied the sale of drugs.

lesser included offense upon which the prosecution requested an instruction is (1) easily ascertainable from the charging document, and (2) not so remote in degree from the offense charged that the prosecution's request appears to be an attempt to salvage a conviction from a case which has proven to be weak, the prosecution may obtain a lesser included offense instruction over the defendant's objection.' "). In *Smith*, 412 Md. at 173–74, 985 A.2d 1204, the Court of Appeals held that the introduction of a lesser included offense instruction is proper, so long as the instruction is introduced before closing arguments, where the parties have the opportunity to address the offense before the fact-finder.[4]

Here, the trial judge notified counsel of his intent to give the possession instruction at the conclusion of Sullivan's testimony, and again at the conclusion of all the evidence in the case. The trial court instructed the jury on the lesser included offense of possession of cocaine before closing arguments, at which point, appellant had an opportunity, through his counsel, to address the charge in front of the jury. We perceive no error in the circuit court's instruction to the jury on possession of cocaine.

## II.

■ Appellant argues that the circuit court erred by instructing the jury, on its own initiative, regarding possession

---

4. In *Smith*, the Court held that, "a trial court may not convict a defendant of an uncharged lesser included offense unless the parties are given an opportunity to present arguments on that offense in the trial court." 412 Md. at 172, 985 A.2d 1204. Though the Court's holding in *Smith* concerned bench trials, the Court continued:

This rule is consistent with our decisions in both *Hagans* and *Brooks* [*v. State*, 314 Md. 585, 552 A.2d 872 (1989)], which provide the parties with an opportunity to address, in closing arguments, all the offenses that the fact-finder is considering. In *Hagans*, we allowed the trial judge to instruct the jury on an uncharged lesser included offense. 316 Md. at 455, 559 A.2d at 804. Closing arguments occur after the jury is given its instructions, so, under *Hagans*, the parties must know by closing arguments what offenses the fact-finder is considering. *See* Md. Rule 4–325(a).

412 Md. at 173–74, 985 A.2d 1204.

of cocaine as a lesser included offense of distribution of cocaine. Appellant contends that by initiating discussion with counsel, concerning the giving of an instruction for a lesser included offense, "the trial court improperly inserted itself in the proceeding." Relying on *Skrivanek*, 356 Md. 270, 739 A.2d 12, appellant argues that an "affirmative agreement" from one of the parties is required before the trial court may instruct the jury on a lesser included offense. Appellant asserts that neither party "affirmatively agreed" to the court's instruction on possession of cocaine as a lesser included offense. Appellant argues that while the State ultimately "gave qualified acquiescence to inclusion of the charge, it was well after the court's inclusion of the charge was a foregone conclusion."

In contrast, the State contends that it explicitly agreed to the instruction being given to the jury.

In *Hagans,* the Court recognized that there is disagreement among jurisdictions "as to whether the trial court should, *sua sponte,* give a jury instruction on an uncharged lesser included offense." 316 Md. at 454, 559 A.2d 792. The Court pointed out that some courts uphold the trial court's giving the instruction where it was neither requested nor supported by either side. *Id.* (citing *U.S. v. Cooper,* 812 F.2d 1283 (10th Cir.1987); *People v. Wickersham,* 32 Cal.3d 307, 650 P.2d 311, 319, 185 Cal.Rptr. 436 (1982); *People v. Johnson,* 409 Mich. 552, 297 N.W.2d 115 (1980); *State v. Pribil,* 224 Neb. 28, 395 N.W.2d 543 (1986); *State v. Hicks,* 241 N.C. 156, 84 S.E.2d 545 (1954); *State v. Cook,* 319 N.W.2d 809 (S.D.1982)). Other courts take the view that it is appropriate for the parties to decide whether the instruction is to be given. *Id.* (citing *Walker v. United States,* 418 F.2d 1116, 1119 (D.C.Cir.1969); *People v. Sowinski,* 148 Ill.App.3d 231, 247, 101 Ill.Dec. 326, 335, 498 N.E.2d 650, 659 (1986)). In *Hagans,* the Court held that:

> The better view, we believe, is that the trial court ordinarily should not give a jury an instruction on an uncharged lesser included offense where neither side requests or affirmatively agrees to such instruction. It is a matter of prosecution

and defense strategy which is best left to the parties. There is no requirement that the jury pass on each possible offense the defendant could have committed. We permit, for example, the State to nolle prosse an offense, and we allow plea bargains. When counsel for both sides consider it to be in the best interests of their clients not to have an instruction, the court should not override their judgment and instruct on the lesser included offense.

316 Md. at 455, 559 A.2d 792.

The issue was addressed squarely by the Court in *Skrivanek*, 356 Md. 270, 739 A.2d 12. In *Skrivanek*, the defendant was charged with possession of a controlled dangerous substance, and possession of a controlled dangerous substance with the intent to distribute. 356 Md. at 277, 739 A.2d 12. The trial court explained to the prosecutor: "I think the State is going to have an awful tough time with this thing when you have a person almost in custody. However, you are probably entitled to a lesser included offense instruction." *Id.* at 278, 739 A.2d 12. The prosecutor replied: "With these cases I am not going to object to the [c]ourt offering that to the jury" and "I would like to have the [c]ourt keep attempt alive." *Id.* at 279, 739 A.2d 12 (emphasis removed). The Court of Appeals held that, "[t]he prosecutor not only stated that he was 'not going to object to the [c]ourt offering [the attempt theory] to the jury,' but he also affirmatively said that he 'would like to have the [c]ourt keep attempt alive.'" *Id.* at 282, 739 A.2d 12. In *Skrivanek*, the Court explained: "Like the trial judge in *Hagans*, the trial judge in the present case initiated the discussion of the lesser included offense instruction.... A prosecutor may be said to 'request or affirmatively agree to such an instruction' even though the judge initially raises the possibility of giving the instruction." 356 Md. at 282, 739 A.2d 12. In *Skrivanek*, the Court stated:

Here, the instructions given on the lesser included offenses *supported* the State's stated strategy. The prosecutor's adherence to the viability of the charges of actual possession did not reflect an "all or nothing" strategy in favor of those charges. Faced with the trial court's view that the State's

case on the greater charged offenses was legally insufficient, and anticipating the grant of a motion for acquittal, the prosecutor enlarged his theory of the case and adopted a fall-back position. In other words, the State's modified strategy included the alternative of a lesser included offense instruction. Thus, the court's submission of the attempt instruction to the jury cannot be viewed as a decision by the trial judge acting without the affirmative agreement of at least one party.

356 Md. at 283, 739 A.2d 12 (emphasis in original).

In this case, the record reflects, the State affirmatively agreed to, and indeed argued for, the possession of cocaine instruction. The State advised the circuit court that "the State would agree that the possession charge would be appropriate if at least what his intent was to possess cocaine according to the defense argument." In addition to agreeing that the instruction was warranted, the State affirmatively argued for inclusion of the lesser included offense instruction on possession of cocaine. The State pointed out that defense witness, Sullivan, testified appellant held the cocaine and that the cocaine was in appellant's vehicle. Based on this evidence, the State argued that appellant "had the possession[,] [f]or all intents and purposes."

■ It is only "when counsel for **both** sides consider it to be in the best interests of their clients not to have an instruction" given that it is inappropriate for the circuit court to give an instruction on the lesser included offense. *Hagans,* 316 Md. at 455, 559 A.2d 792 (emphasis added). In light of the affirmative agreement and argument of the State, the trial court did not err in instructing the jury on the lesser included offense instruction on possession of cocaine.

### III.

Appellant contends that evidence introduced at trial was not sufficient to sustain a conviction for fleeing and eluding, in violation of T.A. § 21–904(c). Appellant argues that T.A. § 21–904(c) prohibits fleeing and eluding a police officer, who "is in a vehicle appropriately marked as an official police

vehicle," and that the evidence introduced at trial established that the officer who pursued him was in an "unmarked" vehicle. Appellant maintains that the evidence "was insufficient as a factual and legal matter" to convict him of fleeing and eluding, in violation of T.A. § 21–904(c), because the legislature failed to provide a definition of the phrase "a vehicle appropriately marked as an official police vehicle."

The State responds that the evidence adduced at trial was sufficient for the jury to conclude that Sergeant Hill was "in a vehicle appropriately marked as an official police vehicle" because no definition of the phrase "vehicle appropriately marked as a police vehicle" is required as the words have common sense meanings. The State contends that Sergeant Hill's initiation of the siren and red and blue lights on the windshield visor of the vehicle "provide[d] appropriate notice to [appellant] of the vehicle's use by a police officer." The State points out that the testimony of defense witness, Sullivan, confirmed the State's contention that appellant knew he was being pursued by a police vehicle. The State contends that whether Sergeant Hill was operating a "vehicle appropriately marked as an official police vehicle" was a factual determination for the jury.

Maryland statute T.A. § 21–904(c) provides:

(c) *Fleeing on foot.*—If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a **vehicle appropriately marked as an official police vehicle,** a driver of a vehicle may not attempt to elude the police officer by:

(1) Willfully failing to stop the driver's vehicle;

(2) Fleeing on foot; or

(3) Any other means.

(Emphasis added). When an issue on appeal involves an interpretation and application of Maryland statutory law, this Court must determine whether the trial court's conclusions are legally correct under a *de novo* standard of review. *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006).

In our view, with the argument that the legislature has not defined the phrase "appropriately marked as an official police

vehicle," appellant raises an issue of statutory interpretation. Maryland appellate courts have not yet commented on what constitutes a "vehicle appropriately marked as an official police vehicle" under T.A. § 21–904(c) or whether the existence of lights and sirens on a vehicle satisfies the definition of a vehicle so marked. Courts in other jurisdictions, interpreting similar statutes, have addressed the issue. We shall discuss those authorities below.

## A.   Other Jurisdictions

### (1)  Washington

In *State v. Ritts*, 94 Wash.App. 784, 973 P.2d 493, 494 (1999),[5] the Court of Appeals of Washington, Division Three,[6] affirmed the trial court's granting of the defendant's motion to

---

**5.**  In a precursor to *Ritts*, the Court of Appeals of Washington, Division One, in *State v. Trowbridge*, 49 Wash.App. 360, 742 P.2d 1254 (1987), held that the eluding statute simply requires knowledge that the pursuing vehicle is a police vehicle. 742 P.2d at 1256. In *Trowbridge*, the defendant was signaled to stop by two uniformed police officers, one of whom was standing by a fully marked police vehicle and the other standing next to an unmarked police vehicle. 742 P.2d at 1255. When the defendant failed to stop, the uniformed officer in the unmarked car followed the defendant. *Id.* The defendant admitted "she had seen the accident scene, that she knew it was a police officer who had motioned her to stop, and that she 'made a mistake and took off.' " *Id.* Trowbridge argued that "appropriately marked" within RCW 46.61.024 must be read in conjunction with RCW 46.08.065, the marking statute. *Id.* The Court disagreed, and further held that the signal to stop need not be given by the officer while the officer is pursuing in a police vehicle. *Id.* at 1256. Therefore, when the defendant was given the visual and audible signal to stop by the two uniformed officers who were standing near their police vehicles, the signal to stop element was met. *Id.*

*Ritts* distinguished *Trowbridge*, explaining:
The eluding statute expressly requires that the signal to stop come from a uniformed officer whose vehicle is appropriately marked showing it to be an official police vehicle. RCW 46.61.024. Appropriate marking is described in RCW 46.08.065 as identifying lettering or logo. The undercover exemption of RCW 46.08.065(1) waives the administrative marking requirement to permit the sheriff's department to operate unmarked cars for investigations. However, the criminal statute cannot be read to waive the requirement that the police vehicle be marked.

dismiss the charge of attempted felony eluding where the police car the defendant attempted to elude was not "marked" with identifying police lettering or insignia, although the car was equipped with flashing lights and a siren. In *Ritts*, the facts were undisputed. 973 P.2d at 494. The police officer was in uniform; however, he was driving an unmarked vehicle. *Id.* "The [vehicle] was equipped with alternating high beam and headlights (wigwags), siren, red and blue strobe lights mounted at the top of the windshield and inside the front grill, and blue and yellow flashers in the rear window. It was not 'marked' with lettering or a logo on the doors." *Id.* at 495. The defendant when first approached by the officer braked hard and then drove off at a high speed for about two miles. *Id.* The defendant subsequently abandoned the car and ran on foot. *Id.* The defendant "admitted he saw the officer behind [him]." *Id.*

The defendant was charged with violating Washington, Rev. Code Wash. (RCW) § 46.61.024, which provided:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his

---

....
In *Trowbridge*, relied on by the State, the statute was held satisfied when an unmarked vehicle actually gave chase after the signal to stop had been given by a uniformed officer whose vehicle was marked with the letters and stripes of an official police vehicle. *Trowbridge*, 49 Wash.App. at 363, 742 P.2d 1254.
That did not happen here. Although the Bronco's emergency lights, including a blue light, were flashing, the statute requires a signal to stop by a uniformed officer whose vehicle is marked.
Mr. Ritts' admission that he knew his pursuer was a law enforcement officer does not relieve the State of proving the elements of the eluding statute.
973 P.2d at 496.

**6.** The Court of Appeals of Washington is separated into three divisions. Rev.Code Wash. (A RCW) § 2.06.020 (2011), provides, in part:

The [Court of Appeals] shall have three divisions, one of which shall be headquartered in Seattle, one of which shall be headquartered in Spokane, and one of which shall be headquartered in Tacoma....
Appeals from the [Court of Appeals] to the supreme court shall be only at the discretion of the supreme court upon the filing of a petition for review. Rev.Code Wash. (ARCW) § 2.06.030 (2011).

vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a **visual or audible signal to bring the vehicle to a stop,** shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. **The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.**

(Emphasis added). The Court addressed "whether the flashing lights and siren 'appropriately marked' the undercover Bronco as a police vehicle, absent a police logo or lettering on the sides." *Id.* The Court explained RCW § 46.08.065 requires that "all public vehicles including police cars must be marked on the sides with identifying lettering or logo." *Id.* Undercover sheriff's office and police vehicles, however, are exempt from the lettering or logo requirement. *Id.* The Court also observed that because RCW § 46.61.024 is a criminal statute, it must be strictly construed in favor of the defendant. *Id.* The Court reasoned:

The eluding statute expressly requires that the signal to stop come from a uniformed officer whose vehicle is appropriately marked showing it to be an official police vehicle. RCW 46.61.024. Appropriate marking is described in RCW 46.08.065 as identifying lettering or logo. The undercover exemption of RCW 46.08.065(1) waives the administrative marking requirement to permit the sheriff's department to operate unmarked cars for investigations. However, the criminal statute cannot be read to waive the requirement that the police vehicle be marked.

The plain language of RCW 46.61.024 expressly requires both a signal and a marked car. It does not require one or the other. If either the presence of signaling equipment or the nature of the signal itself renders a police vehicle appropriately marked, the language requiring appropriate identifying marking is superfluous. The statutory language includes no exception for unmarked undercover vehicles, with or without flashing lights.

. . . .

... The undercover vehicle pursuing Mr. Ritts was not appropriately marked as a police vehicle. Therefore, the State failed to prove the elements of RCW 46.61.024. This may not be the result the Legislature intended by this statute, but it is nonetheless the result required by the present wording of the statute. We are constrained to therefore affirm the order of dismissal.

*Id.* at 496. The Court held that even though the defendant admitted he knew an officer was behind him, this did not "relieve the State of proving the elements of the eluding statute." *Id.*

Similarly, in 2001, the Court of Appeals of Washington, Division One, in *State v. Argueta*, 107 Wash.App. 532, 27 P.3d 242, 243 (2001), *superseded by statute* as stated in *State v. Hunley*, 161 Wash.App. 919, 253 P.3d 448 (2011), reversed the defendant's conviction for attempting to elude a police officer, as the vehicle the defendant attempted to elude was not "appropriately marked showing it to be a police vehicle." In *Argueta*, the officer was in uniform, driving an unmarked vehicle equipped with black push bars on the front bumper, several antennas, an exterior spotlight mounted to the driver's door post, several emergency lights visible when activated, and a three-tone siren. 27 P.3d at 243. During the pursuit of the defendant, the officer continuously activated his lights and siren. *Id.* at 244. The Court of Appeals was called upon to interpret RCW § 46.61.024. *Id.*

The Court, in *Argueta*, reached the same conclusion as the Court in *Ritts*, but for different reasons. The Court explained:

[W]e conclude that to be "marked" under the eluding statute, a vehicle must bear some type of insignia that identifies it as a police vehicle. Emergency equipment does not constitute a "mark" under the ordinary dictionary definition of the term. Emergency equipment is a signaling device, not an identifying device. The ordinary meaning of the term "mark" connotes writing or other characters affixed to the vehicle that conveys its identity or ownership, such as a

decal bearing the name of the police department to which the vehicle belongs. We therefore hold that to be "appropriately marked" for purposes of the eluding statute, a vehicle must bear an insignia that identifies the vehicle as an official police vehicle.

Our conclusion is supported by another rule of statutory construction, namely, that we will not interpret statutes in such a way that would render a word or provision superfluous. In a provision separate from the one imposing the "appropriately marked" requirement, the eluding statute contains the term "attempting to elude a pursuing police vehicle." A car with flashing strobe lights, headlights flashing from one side to the other and from high to low beam, a flashing red and blue light on the dashboard, and a three tone siren that is pursuing a civilian vehicle would be understood by a person of ordinary intelligence to be a pursuing police vehicle. So, under the common and ordinary meaning of the term "pursuing police vehicle," [the officer's] vehicle would constitute such a vehicle. Were we to conclude that the evidence is sufficient to sustain Argueta's conviction, we would improperly render the "appropriately marked" requirement superfluous because the conviction could be based on the fact that Argueta attempted to elude a "pursuing police vehicle" even though it was not "appropriately marked."

To give meaning to the "appropriately marked" requirement, we must assume that the Legislature intended to require something more than the presence of activated emergency equipment in order to render a police vehicle appropriately marked for purposes of the eluding statute. That "something more" the Legislature required is a "mark," which, under the ordinary meaning of the term, means an insignia identifying the vehicle as an official police vehicle.

*Id.* at 245–46 (footnote omitted). In *Argueta,* the Court called for action by the legislature stating: "The logic and practicality of this result are, in our view, matters worthy of the Legislature's attention. The eluding statute, as presently worded, requires the presence of some identifying insignia in

order for a vehicle to be appropriately marked. Without it, a defendant cannot be convicted under the statute as written." 27 P.3d at 246.

In 2003, the Washington State Legislature amended RCW § 46.61.024 to read, in pertinent part:

(1) Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given **a visual or audible signal to bring the vehicle to a stop,** shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. **The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.**

Ann. Revised Code Wash. § 46.61.024 (emphasis added). The amendment changed the requirement that the officer's vehicle "be appropriately marked showing it to be an official police vehicle" to include the language that the vehicle be "equipped with lights and sirens."

### (2) Arizona

The Court of Appeals of Arizona, Division Two, in *State v. Schultz,* 123 Ariz. 120, 597 P.2d 1023 (1979), reversed a defendant's conviction for fleeing from a law enforcement vehicle, in violation of Arizona Revised Statutes (A.R.S.) § 28–622.01, which provides:

Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing official law enforcement vehicle which is being operated in the manner described in subsection C of § 28–624 is guilty of a felony punishable by imprisonment in the state prison for not less than one year nor more than five years or by a fine of not less than one hundred dollars nor more than five thousand dollars, or both. Such law enforcement vehicle shall be **appropriately marked** showing it to be an official law enforcement vehicle.

*Id.* at 1023 (emphasis added). A.R.S. Subsection C of § 28–624 provides:

C. The exemptions authorized by this section for an authorized emergency vehicle apply only if the driver of the vehicle while in **motion sounds an audible signal by bell, siren or exhaust whistle** as reasonably necessary **and if the vehicle is equipped with at least one lighted lamp displaying a red or red and blue light or lens** visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red or red and blue light or lens visible from in front of the vehicle.

In *Schultz,* the pursuing officer was in an unmarked police car. The Court held that:

The state argues that it may be inferred that the pursuing vehicle was appropriately marked so as to show it to be an official law enforcement vehicle from the fact that it was a police vehicle equipped with a radio, blinking red lights and a revolving yellow light, a siren, and flashing headlights. We disagree. If every police vehicle so equipped were appropriately marked within the meaning of § 28–622.01, there would be no need for the last sentence of the statute inasmuch as the operation of such lights or siren is required by the reference in the first sentence to § 28–624. It is presumed that the legislature did not intend to do a futile thing by including in a statute a provision that is non-operative. *State v. Cassius,* 110 Ariz. 485, 520 P.2d 1109 (1974).

The legislature has established as an essential element of the crime of unlawful flight from a pursuing law enforcement vehicle that the pursuing vehicle be appropriately marked. In the absence of any proof of that element appellant's conviction cannot stand.

597 P.2d at 1024.

### (3) Georgia

The Court of Appeals of Georgia in *Stephens v. State,* 278 Ga.App. 694, 629 S.E.2d 565, 566 (2006), reversed the defen-

dant's conviction for possession of cocaine with the intent to distribute. In *Stephens,* the defendant was arrested for attempting to elude a non-uniformed detective, who was following the defendant in an unmarked car, in violation of Official Code of Georgia Annotated ("O.C.G.A.") § 40–6–395(a) which provides, in part:

It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when **given a visual or an audible signal** to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her **vehicle shall be appropriately marked**[7] showing it to be an official police vehicle.

---

**7.** O.C.G.A. § 40–8–91 (2011) provides, in part, the "Marking and equipment of law enforcement vehicles:"

(a) Except as provided in subsection (b) of this Code section, any motor vehicle which is used on official business by any person authorized to make arrests for traffic violations in this state, or any municipality or county thereof, shall be distinctly marked on each side and the back with the name of the agency responsible therefor, in letters not less than four inches in height.

(b) Any motor vehicle, except as hereinafter provided in this subsection, used by any employee of the Georgia State Patrol for the purpose of enforcing the traffic laws of this state shall be distinctly painted, marked, and equipped in such manner as shall be prescribed by the commissioner of public safety pursuant to this Code section. The commissioner in prescribing the manner in which such vehicles shall be painted, marked, or equipped shall:

(1) Require that all such motor vehicles be painted in a two-toned uniform color or a solid color. For vehicles painted in a two-toned color, the hood, top, and the top area not to exceed 12 inches below the bottom of the window opening thereof shall be a light gray color and the remaining portion of said motor vehicle shall be painted a dark blue color;

(2) Require that any such motor vehicle be equipped with at least one lamp which when lighted shall display a flashing or revolving colored light visible under normal atmospheric conditions for a distance of 500 feet from the front and rear of such vehicle; and

(3) Require that any such motor vehicle shall be distinctly marked on each side and the back thereof with the wording "State Patrol" in

629 S.E.2d at 567 (emphasis added) (emphasis in original omitted). The Court concluded that: "Where the record 'is devoid of any evidence that the officer who signaled appellant to stop was in uniform prominently displaying his badge of office or that the officer's vehicle was appropriately marked showing it to be an official police vehicle,' the essential elements of the crime are not present." *Id.* (citing *Phillips v. State,* 162 Ga.App. 471, 291 S.E.2d 776, 777 (1982) ("The record in the instant case is devoid of any evidence that the officer who signaled appellant to stop was in uniform prominently displaying his badge of office or that the officer's vehicle was appropriately marked showing it to be an official police vehicle." Therefore, "the state failed to prove essential elements of the offense charged.")).

### *(4) North Dakota*

The Supreme Court of North Dakota in *State v. Erdman,* 422 N.W.2d 808 (N.D.1988), reversed the defendant's conviction for fleeing a police officer, in violation of North Dakota Century Code ("N.D.C.C.") § 39–10–71 (1985), which provided:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, **when given a visual or audible signal to bring the vehicle to a stop,** shall be guilty of a class A misdemeanor. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform, prominently displaying his badge of office, and his **vehicle shall be appropriately marked showing it to be an official police vehicle.**

(Emphasis added) (emphasis in original omitted). The Court found that it was undisputed that the police officers were not wearing uniforms and were in unmarked vehicles; therefore,

---

letters not less than six inches in height of a contrasting color from the background color of the motor vehicle. . . .

the defendant's conviction for violating N.D.C.C. § 39–10–71 was reversed. *Id.* at 810. The Court explained:

The State contends section 39–10–71, N.D.C.C., must be interpreted "with a sense of reasonableness and an examination of legislative intent." The State supports its "reasonableness" standard of interpreting section 39–10–71, N.D.C.C., with the following hypothetical question: "What if the police officer in civilian clothing drove a patrol car with permanent overhead lights and markings on the front doors. Shouldn't that officer be justified in expecting a subject vehicle to respond accordingly when signaled to stop? I think so." Whether or not an officer in such a situation should reasonably expect the driver to stop is arguable. Interpretation of this section, however, is not controlled by an officer's reasonable expectations. Furthermore, we think it improper to attempt to discern legislative intent from anything other than the language of the statute when the language specifically requires the officer to wear a uniform and display a badge when attempting to signal a stop. Discerning legislative intent in this case is precluded by section 1–02–05, N.D.C.C., which reads: "when the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

*Id.* (footnote omitted).

### (5) *Wisconsin*

The Court of Appeals of Wisconsin in *State v. Oppermann,* 156 Wis.2d 241, 456 N.W.2d 625, 626 (1990), rejected the trial court's finding that "so long as a car is equipped with lights and a siren, whether visible to the public or not, it is a police vehicle and therefore is marked in some fashion as a police vehicle." In *Oppermann,* the defendant was convicted of knowingly fleeing a marked police vehicle in violation of Wisconsin Statutes ("Wis.Stat.") § 346.04(3), which provides:

No operator of a vehicle, after having received a **visual or audible signal** from a traffic officer, **or marked police vehicle,** shall knowingly flee or attempt to elude any traffic

officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall he increase the speed of his vehicle or extinguish the lights of his vehicle in an attempt to elude or flee.

456 N.W.2d at 626 (emphasis added). The Court addressed whether a vehicle equipped only with "red lights and a siren" is a "marked police car." *Id.* The Court explained:

The keystone of the fleeing charge is "knowingly" fleeing an officer. Even if a citizen does not observe that it is an "officer" pursuing the person, that citizen will still be held to knowledge if the vehicle has decals or other markers identifying the auto as a law enforcement vehicle.

However, the legislature did not state that just because a vehicle has flashing red lights and a siren it is automatically considered a police vehicle. Indeed, as the 1987 attorney general's opinion points out, the legislature has expressly provided, in sec. 347.25(lm)(b), Stats., that red and blue lights may be used on an unmarked police vehicle. Consequently, the fact that a police vehicle displays both red and blue lights would not make it a marked police vehicle. 76 Op. Att'y Gen. at 215 n. 1.

*Id.* at 627.

### (6) Florida

The Court of Appeal of Florida, Third District, in *Gorsuch v. State,* 797 So.2d 649, 650 (Fla.Dist.Ct.App.2001), reversed a defendant's conviction for fleeing or attempting to elude a police officer in violation of Florida Statutes ("Fla.Stat.") § 316.1935 (2000), which provided:

(1) It is unlawful for the operator of any vehicle, **having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer,** willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the

> officer, and a person who violates this subsection commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
>
> (2) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle **with agency insignia and other jurisdictional markings** prominently displayed on the vehicle **with siren and lights activated** commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
>
> (3) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle **with agency insignia and other jurisdictional markings** prominently displayed on the vehicle **with siren and lights activated,** and during the course of the fleeing or attempted eluding drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

*Id.* (emphasis in original). In *Gorsuch,* it was undisputed that the defendant was involved in a high speed chase with three police vehicles, two of which were unmarked and one which bore "a 15 inch City of Miami seal, on the car's door." 797 So.2d at 650–51. The Court held that, "[t]here was no evidence, however, that any of the vehicles had an agency insignia as required by Fla. Stat. § 316.1935." *Id.; see also, Slack v. State,* 30 So.3d 684, 687 (Fla.Dist.Ct.App.2010) ("While Deputy Stone testified he was driving a 'marked patrol car' with 'lights on top' and that he activated his lights and siren, there was no evidence of 'agency insignia and other jurisdictional markings prominently displayed on the vehicle.' § 316.1935(2), Fla. Stat. (2006). That not all markings on law enforcement vehicles constitute agency insignia was made clear in *Gorsuch.* By neglecting to adduce any evidence that Deputy Stone's vehicle had agency insignia or other jurisdictional markings, the State failed to make out a prima facie case of fleeing or attempting to elude a law enforcement officer in violation of section 316.1935(2), and the trial court erred in denying Mr. Slack's motion for judgment of acquit-

tal."); *Jackson v. State*, 818 So.2d 539, 541–42 (Fla.Dist.Ct. App.2002) ("We also agree with Jackson that the State failed to prove felony fleeing or attempting to elude. To convict for this offense, the State must prove that the defendant fled from a law enforcement officer 'in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle with siren and lights activated.' *See* § 316.1935(2), Fla. Stat. (2000). Here, the State presented Officer Newcomb's testimony that his overhead lights and siren were activated, but there was no testimony that his vehicle was otherwise marked.").

### (7) California

In *People v. Estrella*, 31 Cal.App.4th 716, 37 Cal.Rptr.2d 383 (1995), the relevant flight from peace officer statute required the police vehicle to be "distinctively marked." In *Estrella*, the Court of Appeal of California, Fifth Appellate District, found that although a red light and siren alone do not distinctively mark a police vehicle, under the circumstances of the case, where there were additional devices on the police vehicle such as—headlights (wigwag lights), flashing blue and clear lights, and the officers being in police department clothing— the vehicle was distinctively marked as a police vehicle. 31 Cal.App.4th at 723, 37 Cal.Rptr.2d 383. California Vehicle Code ("Cal.Veh.Code") § 2800.1 provides:

> Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist:
> (a) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.
> (b) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.
> (c) The peace officer's motor vehicle is **distinctively marked.**
> (d) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section

830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform." (Stats.1988, ch. 504, § 1, p.1918.)

*Id.* at 721, 37 Cal.Rptr.2d 383 (emphasis added). The Court noted that the *Webster Third International Dictionary* (1986) defines the adjective "marked" to mean "having a mark of a specific kind, or having a distinctive or strongly pronounced character. A 'mark' is a character, device, label, brand, seal or other sign put on an article, especially to show the maker or owner, to certify quality or for identification." *Id.* at 722, 37 Cal.Rptr.2d 383. In *Estrella*, the Court opined "it may reasonably be concluded that a vehicle is distinctively marked if it bears a symbol or device that identifies it as a peace officer's vehicle." 31 Cal.App.4th at 722, 37 Cal.Rptr.2d 383. The Court stated:

> Therefore, to construe "distinctively marked" to mean simply exhibiting a red light and sounding a siren would result in section 2800.1, subdivision (c) (requiring the vehicle to be "distinctively marked") being considered mere surplusage.

*Id.* at 723, 37 Cal.Rptr.2d 383.

### B. Plain Language

"Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Tribbitt v. State,* 403 Md. 638, 645–46, 943 A.2d 1260 (2008) (citations omitted). "If the plain language of the statute is unambiguous, the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' " *Id.* "If, however, the meaning of the plain language is ambiguous or unclear, we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Id.*

As to the plain language of the statute, *Merriam–Webster's Collegiate Dictionary,* 61, 760 (11th ed.2003), defines the word "appropriate" as "especially suitable and compatible" or "to set apart for or assign to a particular purpose or use," the word "marked" as "having an identifying mark" and the word "mark" as a "sign, indication, a symbol used for identification." Although not dispositive, applying these definitions to the statute at hand contributes to a conclusion that one interpretation of the phrase "a vehicle appropriately marked as an official police vehicle" is that the vehicle must bear a type of sign, symbol, or insignia. In this instance, after examining the language of the statute, we conclude that the meaning of the phrase "vehicle appropriately marked as an official police vehicle," is not capable of final determination based on a plain reading. In other words, the language is ambiguous. As such, we shall examine the legislative history of the statute.

### C. Legislative History

The legislature enacted § 11–904 of the Annotated Code of Maryland, Vehicle Laws entitled "Fleeing or attempting to elude a police officer" originally in 1970. The 1970 statute provided:

> Any driver of a motor vehicle who wilfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor. The signal given by the police officer may be by hand, voice, emergency light, or siren. **The officer giving the signal shall be in uniform, prominently displaying his badge or other insignia of office, and his vehicle shall be appropriately marked showing it to be an official police vehicle.**

1970, ch. 534, § 1.

In *United States v. Goodwin,* 637 F.2d 250, 256 (4th Cir. 1981) *rev'd on other grounds,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), in considering T.A. § 21–904, the Fourth Circuit Court of Appeals found that the purpose of the then

existing 1970 version of the statute was to affect compliance with an officer's signal to stop. The Court explained:

> Not unreasonably, notice of the authority of the officer to give the signal is an essential element of the crime of failing to obey. That notice is given when the officer is on foot and is wearing his uniform and insignia of office, or, if the officer is in a vehicle, when the vehicle is marked as an official police vehicle. In the latter instance, additional notice from the wearing of a uniform and displaying an insignia of office is unnecessary, especially when it is remembered that the garb of the policeman within the official police vehicle may not even be visible.
>
> A contrary reading would lead to some bizarre results. If both conditions must be alleged and proved in order to render § *21–904* applicable, a motorist with impunity could ignore a signal to stop from a plainclothes policeman in an official police car or an off-duty policeman in a official car. We do not think that these possibilities were intended by the Maryland legislature.

*Id.*

In *Goodwin*, the defendant had been convicted of "Fleeing and Eluding" under T.A. § 21–904, which at that time required that an officer give a visual or audible signal to stop, in an appropriately marked police vehicle **and** that the officer be in uniform prominently displaying his badge or the insignia of office. 637 F.2d at 251, 255–56. In *Goodwin*, although the indictment charged that the defendant had been given a signal to stop by an officer in a vehicle appropriately marked as a police vehicle, the indictment did not, however, allege that the officer was in uniform or displaying a badge. 637 F.2d at 256. Against this background, the Fourth Circuit Court of Appeals found that "[i]f both conditions [of the statute] must be alleged and proved to render [T.A.] § 21–904 applicable, a motorist could ignore a signal to stop from a plainclothes police officer in an official police car." *Id.*

Following the Court's decision in *Goodwin*, the statute was amended by the legislature, in 1981, to separate the require-

ments that the officer be either in uniform or in a vehicle appropriately marked as an official police vehicle. The 1970 statute was repealed and reenacted as T.A. § 21–904 in 1981, with amendments, and was subsequently amended in 1986 and 2005. The discernable legislative history of the statute consists of Bill Number 1707, Chapter 471 (1981), Bill Number 596, Chapter 472 (1986), and Bill Number 429, Chapter 482 (2005). 2005 Md. ALS 482; 1986 Md. ALS 472; 1981 Md. ALS 471. Bill Number 1707 provides that the statute was amended in 1981 with the following intent:

> For the purpose of prohibiting the driver of a motor vehicle from attempting to elude a police officer not in uniform when signaled to stop by that police officer, if the officer is in an **officially marked police vehicle** . . . .

(Emphasis added). Although the purpose of Bill Number 1707, as set forth in the legislative history, was to prohibit a driver from eluding a police officer in an "officially marked" police vehicle, the statute, as reenacted in 1981, read:

> (a) This section applies when a police officer gives a signal to stop, whether by hand, voice, emergency light, or siren if:
>
> > (1) The police officer is in uniform, prominently displaying his badge or other insignia of office or
> >
> > (2) The police officer, whether or not in uniform, is in a **vehicle appropriately marked as an official police vehicle.**

(Emphasis added).

The original version of the statute in 1970 required that the vehicle be "appropriately marked showing it to be an official police vehicle," and the purpose of the 1981 amendment, as stated in Bill Number 1707, was to prevent the elusion of "officially marked" vehicles.[8] Thus the evolution of the language in the statute from 1970, requiring that the vehicle be

---

8. There is no indication in the 1986 Bill or 2005 Bill as to the intended definition of the phrase "a vehicle appropriately marked as an official police vehicle."

"appropriately marked showing it to be an official police vehicle," along with the stated purpose of the 1981 amendment to prohibit fleeing an "officially marked vehicle," leads to the conclusion that the phrase "appropriately marked as an official police vehicle" was intended by the legislature to require a vehicle with the official markings or designations of a police vehicle.

### D.  Analysis

In sum, our examination of the plain meaning and legislative history of T.A. § 21–904(c), as well as the case law in other jurisdictions that we reviewed, leads to the inescapable conclusion that "a vehicle appropriately marked as an official police vehicle" is not synonymous with a vehicle equipped simply with lights and sirens.  We conclude, as Courts in other jurisdictions have in analyzing analogous statutes, based on the language of T.A. § 21–904(c), and the facts of this case, that the State failed to prove that Sergeant Hill was operating a vehicle "appropriately marked as an official police vehicle."  To the extent the State contends that the testimony of defense witness, Sullivan, confirmed the State's point that appellant knew he was being pursued by a police vehicle, this is of no significance, as we, like other Courts, observe that the State bears the burden to prove all elements of an offense beyond a reasonable doubt.  The activation of the lights and siren did not transform the un-marked police vehicle into a vehicle "appropriately marked as an official police vehicle" as required by the statute.  "When construing a statute, we recognize that it should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.  We will [n]either add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute."  *Tribbitt,* 403 Md. at 645, 943 A.2d 1260.  Reading the statute to permit an officer's activation of lights and sirens to satisfy the requirement that the officer give a visual or audible signal to stop and the requirement that the officer be in "a vehicle appropriately marked as an official police vehicle" would render the language requiring

the marking of the vehicle to be "superfluous or nugatory." *Id.*

There is no rational countervailing reasoning which negates the conclusion that, if every vehicle equipped with lights and sirens is a vehicle "appropriately marked as an official police vehicle" there would be no need for the statutory language requiring that the vehicle be "appropriately marked." We hold that without proof of each of the statutory elements, appellant's conviction of fleeing and eluding in violation of T.A. § 21–904(c) cannot stand.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED AS TO APPELLANT'S CONVICTION FOR POSSESSION OF CDS IN VIOLATION OF C.L. § 5–601; REVERSED AS TO APPELLANT'S CONVICTION FOR FLEEING AND ELUDING IN VIOLATION OF T.A. § 21–904(c); COSTS TO BE PAID 50% BY APPELLANT AND 50% BY MONTGOMERY COUNTY.**